### EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

v.

### D. Justin McCARTHY, et al.

### Civ. Cr. No. 76–2149–Z.

United States District Court, D. Massachusetts.

July 15, 1983.

Marcy Schwartz, E.E.O.C., New York City, for plaintiff.

Elliot D. Lobel, Mahoney, Hawkes & Goldings, Boston, Mass., for defendants.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This action, filed in 1976, alleges that women teaching at Framingham State College ("FSC") have received salaries lower than their male colleagues performing equivalent work, in violation of the Equal Pay Act, 29 U.S.C. § 206(d) (the "Act"). The parties stipulated that the work of men and women faculty at FSC was equal in most respects and agreed that the only issues to be tried were

1) Whether women members of the faculty have been paid less than men; and

2) Whether the work performed by men and women required equal skill; and

3) If a disparity is found, whether it was legally justified by virtue of the implementation of a bona fide merit system.

In addition, plaintiff alleges and defendants deny that such violations as occurred were willful. 29 U.S.C. § 255. On the basis of the parties' stipulation, the testimony adduced in court, and the exhibits submitted by the parties, I conclude that the Equal Employment Opportunity Commission (the "E.E.O.C.") has proven that the defendants, the President of FSC and the Board of Trustees of State Colleges, have willfully violated the Act and that women who have been underpaid are entitled to back pay for all years since 1973.

29 U.S.C. § 206(d)(1) provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system;

(iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

■ In suits alleging violations of this section, the burden is initially on the plaintiff to "show that an employer pays different wages to male and female employees 'for equal work or jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974). Once a plaintiff has made this prima facie showing, a "heavy" burden is imposed upon defendants to show that one of the exceptions, which are to be narrowly construed, is applicable. *Odomes v. Nucare, Inc.,* 653 F.2d 246, 251 (6th Cir.1981); *E.E.O.C. v. Aetna Insurance Company,* 616 F.2d 719, 724 (4th Cir.1980).

Given the parties' definition of the triable issues and the respective burdens of proof, the two elements which the E.E.O.C. had to demonstrate were that different wages were paid to the sexes and that the jobs performed by the sexes required equal skill. Skill was defined by the stipulation as "including considerations of experience, training and education." Neither party asserted that, except for those differences in

job requirements which might be due to department, experience or seniority, men and women performed jobs of qualitatively different types; rather, the focus was on the skill which the individual teachers *actually* brought with them to their jobs.[1]

Plaintiff's sole witness was Dr. Stephan Michaelson, a statistical expert. Dr. Michaelson testified that in using data provided by defendants he had determined that in every year analyzed, from 1969 through 1977, women were paid less than men situated similarly for purposes of salary determination, except during the first year of their employment. In other words, although men and women with similar characteristics—rank, department, and prior experience—initially were paid equally, pay became increasingly unequal as equal amounts of seniority accrued.

Dr. Michaelson obtained his results through the use of multiple regression analysis, a recognized technique which isolates variables and determines their effect on a single dependent variable such as salary. He concluded that the divergences in salaries of men and women could not be explained by other variables (rank, department, previous experience[2] or differences in seniority) which would normally result in differences in pay. Although a full professor is likely to be paid more than an assistant professor or a lecturer, and some departments, such as Physics, pay higher faculty salaries than do others, such as English, these factors did not produce the aver-

---

1. Although the parties' post trial arguments appear to address the skills of individual teachers, for the purposes of plaintiff's prima facie case, it is the skill required by the job, i.e., the skill of teaching, that is relevant. 29 U.S.C. § 206(d)(1). There was no question throughout the case but that the jobs of all teachers, at least when measured within the categories of department and rank, are substantially equal, and I so find. That individuals performing teaching jobs may possess different skills is relevant only as to the applicability of the fourth exception contained in the Act. 1 Larson & Larson, *Employment Discrimination: Sex* § 30.10. This distinction might be crucial in some cases, for the burden of proving inequality under the fourth exception is on the defendant, while the burden of proving

equal job requirements is on the plaintiff. Here, however, the distinction is inconsequential, because the plaintiff in effect successfully assumed the task of disproving the applicability of the fourth exception.

2. Previous experience, as Dr. Michaelson defined that variable, included only such experience before joining the faculty of FSC as appeared to be on track toward college teaching. That experience was then broken down and assigned varying values, depending on whether it was gained before or after achieving a Masters degree, whether it was full or part time teaching, and whether it involved summer courses or night school.

age differences in salary paid to men and women.

Using other statistical techniques, Dr. Michaelson checked the reliability of his conclusions and found that the probability of his results being due to chance was, depending on the year, from one-half of one percent to one one-thousandth of one percent. He also found that the multiple regression equation, through which he arrived at his conclusions, could explain over eighty-five percent of the professional salaries at FSC in any given year.

Defendants' expert, Dr. Richard Freeman, testified that he had performed calculations similar to Dr. Michaelson's and had found that although on the average women were paid less than men, it was not by a statistically significant amount. He stated that he had examined Dr. Michaelson's report and found nothing objectionable in Dr. Michaelson's calculations or model. He believed that their different results could perhaps be explained by their use of different data.

Having carefully considered the testimony of both experts, I accept the conclusions of Dr. Michaelson. He was working from data provided by defendants, whose own expert admitted that he could find no fault with Dr. Michaelson's results, given the data that Dr. Michaelson used. Although defendants argue that Dr. Michaelson did not adequately consider the impact of possession of a PhD on salary, I am persuaded that, as Dr. Michaelson testified, this factor was subsumed into his treatment of the variable of rank. At FSC, rank is in large part determined by possession *vel non* of a PhD. In addition, Dr. Freeman testified that he did not seek to explain the differences in his and Dr. Michaelson's studies by their differing treatment of PhDs. Likewise, although defendants contend that Dr. Michaelson did not adequately rate prior experience, Dr. Freeman testified that he could not identify any single factor other than "data" as an explanation for their differing results. In any event, I find Dr. Michaelson's evaluation of prior experience reasonable and unbiased, whereas the prior experience valuations used by Dr. Freeman are suspect. Dr. Freeman utilized valuations developed by a vice president of FCS and, as plaintiff observes, his "reliance on a college official's valuation of experience may easily have incorporated sex-bias" into his analysis. Whether or not such bias was incorporated, the fact remains that defendants' expert was unable to weaken the compelling and convincing testimony of plaintiff's expert and only strengthened that testimony by stating that he could find no fault with it.

Defendants further contend that Dr. Michaelson's testimony cannot prove an Equal Pay Act violation because he "never ran equations that included only personnel hired after the effective date" of the Act's applicability to professional personnel at educational institutions. However, since the Act forbids simply unequal pay for equal work, regardless of the presence of intent to discriminate, it does not matter when those unequally paid began their careers, provided that, as here, differences in pay are not attributable to differences in seniority. While Dr. Michaelson did analyze data from years prior to the effective date of July 1, 1973, his conclusions were consistent for all years analyzed.

Defendants claim also that a prima facie case has not been made out because Dr. Michaelson did not factor ability into his multiple regression analysis. In their post-trial submissions, the parties disagree as to whether equal ability was incorporated into their stipulation. I find that it was. Administrative regulations define "skill" within the meaning of the Equal Pay Act as "includ[ing] consideration of such factors as experience, training, education, *and ability*." 29 C.F.R. § 800.125 (emphasis added). Defense counsel was familiar with these regulations. The stipulation's words, "Plaintiffs and Defendants do not stipulate that the work performed by the male and female faculty members require equal skill, where skill includes considerations of experience, training and education" indicate that equal ability was stipulated, for unless

this inference is drawn, the quoted sentence is entirely superfluous.[3]

I find on all the evidence, therefore, that plaintiff has shown that women were paid less than men after the first year of employment at FSC and that the difference could not be explained by differences in the experience, training and education of men and women. Plaintiff has therefore made out a prima facie case of violation of the Act.

Although defendants attempted to show that 29 U.S.C. § 206(d)(1)(ii), the merit system exception contained in the Act, is applicable to this case, I find that they have not met their "heavy" burden of proving applicability. The current president of FSC testified that there was a merit system in effect at the school for five years, from 1968 to 1973. No testimony was adduced, however, which linked sexual disparities in pay to this system. Given the conclusions of Dr. Michaelson, it was incumbent upon defendants to demonstrate that sexual differences in pay could be accounted for by the operation of the merit system, i.e., by showing that more men than women received promotions or salary increases due to meritorious performance. The mere fact that a merit system was or has been in effect is insufficient to rebut a prima facie case; a defendant must also show that differentials in pay *resulted* from that system. Assuming, therefore, without deciding, that from 1968 to 1973 FSC had a merit system within the meaning of the Act, *see E.E.O.C. v. Aetna Insurance Company,* 616 F.2d at 725, I find that this system has not been shown to have caused differences in the salaries paid to men and women for equal work.

Having found that defendants have violated the Act, I further find that the violation was willful. "The test for willfulness is whether the employer knew or had reason to know that the [Act] was applicable to its employment practices." *Marshall v. Erin Food Services, Inc.,* 672 F.2d 229, 231 (1st Cir.1982). Plaintiff introduced into evidence the nondiscrimination policy of the Board of Trustees of State Colleges, which indicates that as of at least 1969 the Board knew of the existence of "applicable federal and state [anti-discrimination] law" and stated its intention to conform to such law. From this policy I draw the inference that the Board was aware of the extension of the Act in 1972. Indeed, defendants do not appear to contest the propriety of this inference, but assert rather that a finding of bad faith is a prerequisite to willfulness. The bad faith standard, however, has been squarely rejected by the Court of Appeals for this Circuit. *Erin Food Services, Inc.,* 672 F.2d at 231.[4]

Since plaintiff has proven a willful violation of the Act, female faculty members at FSC are entitled to receive back pay retroactive to three years prior to the filing of this action, i.e., June 1, 1973. Plaintiff shall submit a form of judgment in conformity with this opinion on or before July 29, 1983.

---

3. Moreover, when I inquired at the trial, "But when we talk about skill, ... are we talking about education and experience qualifications only?" defense counsel answered affirmatively.

4. *Erin Foods* did not involve a violation of the Equal Pay Act, but of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* in which the Equal Pay Act was incorporated and of which it now is part. Willful violations of all portions of the Fair Labor Standards Act are treated identically by 29 U.S.C.A. § 255(a), the section construed by the Court of Appeals in *Erin Foods. See also Marshall v. A. & M. Consolidated Independent School District,* 605 F.2d 186 (5th Cir.1979).