**William E. BROCK, Secretary of Labor, United States Department of Labor, Equal Employment Opportunity Commission, Plaintiffs-Appellees,**

v.

**GEORGIA SOUTHWESTERN COLLEGE, et al.,
Defendants-Appellants.**

No. 84–8219.

United States Court of Appeals,
Eleventh Circuit.

July 15, 1985.

Carl C. Jones, Sr., George P. Shingler, Asst. Attys. Gen., Atlanta, Ga., for defendants-appellants.

Dianna B. Johnston, Office of Gen. Counsel, Appellate Services Div., E.E.O.C., Washington, D.C., for plaintiffs-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and PECK *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Appellants Georgia Southwestern College (hereafter "the College"), the Board of Regents of the University System of Georgia (hereafter "the Regents") and the State

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

of Georgia appeal the finding that they willfully violated the Equal Pay Act (hereafter "the Act"), 29 U.S.C. § 206(d)(1) and § 215(a)(3), by paying female faculty members less than male faculty members for "equal work on jobs the performance of which requires equal skill, effort and responsibility ..." and by retaliating against the husband of one of those female instructors.

## I. BACKGROUND

The court below made the following findings:[1]

Georgia Southwestern College is a four year state college, one of thirty-two state institutions of higher learning in Georgia. Such institutions are governed by the Board of Regents.[2] The Regents allocate money to the various state institutions based upon the average faculty salary multiplied by the number of faculty slots. The institution then determines the salaries of individual employees. Hiring of new faculty members begins with the chairperson of the division. Recruitment is not done in any standard way and there is no notice or posting requirement. The president of each institution makes the final decision on hiring, subject to the routine approval of the Chancellor of the University System of Georgia. There are no set salary scales and the amount a new faculty member receives is a matter of agreement between the institution represented by the division chairperson and the employee. Annual salary increases are computed as a percentage of current salary.

As of August 29, 1978, appellant College was divided into the following academic divisions: business administration, education, English and humanities, nursing, physical education, biological sciences, mathematics, physical sciences, social sciences, psychology, social studies, continuing education, and library. Each division had a chairperson.[3] At that time, the College had approximately 125 teachers. The teachers were ranked as follows: (1) instructors; (2) assistant professors; (3) associate professors; and (4) professors. The College's own Divisional Personnel Services Analysis and information prepared by the College for the American Association of University Professors showed that the higher ranking positions were paid more. These reports also showed that men were concentrated in the higher positions, and that, even in the lower ranking positions, men generally received higher salaries than women.

In 1972, the U.S. Department of Labor (DOL) found equal pay violations among the custodial workers at the College. The College and the Regents agreed to pay back wages. In 1974–1975, DOL began an investigation of possible Equal Pay Act violations among the faculty.[4] This investigation culminated in the present lawsuit, filed in 1978, in which DOL[5] alleged that appellants had failed to comply with section 6(d) of the Act, which provides:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, be-

1. The district court's original opinion determining liability is published as *Marshall v. Georgia Southwestern College,* 489 F.Supp. 1322 (M.D. Ga.1980); the opinion setting out the specific back pay and liability period is unpublished, *Donovan v. Georgia Southwestern College,* Civil Action No. 78–4–AMER (M.D.Ga. Dec. 6, 1983); and the opinion granting reinstatement to Dr. Max McKinney is published as *Donovan v. Georgia Southwestern College,* 580 F.Supp. 859 (M.D.Ga.1984).

2. Ga. Const., Art. VIII, § 4, ¶ I.

3. The chairperson normally holds the rank of professor and usually has a doctorate.

4. In 1972, Congress amended the Act to include "any employee employed in a bona fide executive, administrative, or professional capacity...." 29 U.S.C. § 213(a)(1).

5. This suit was filed and tried by DOL; however, the Equal Employment Opportunity Commission (EEOC) was subsequently substituted as a party pursuant to Reorganization Plan No. 1 of 1978, 43 Fed.Reg. 19807 (1978), which transferred Equal Pay Act authority from the DOL to the EEOC.

tween employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this section, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1). DOL alleged that the Act was violated in six specific instances of female faculty members.[6] These six female faculty members are:

1. Dr. Jacquelyn McKinney—Dr. McKinney is an Assistant Professor of Business Education. She teaches such courses as business law, typing, shorthand, business communications, secretarial accounting, and office management. She came to Georgia Southwestern in 1967 with six years experience teaching high school, two years teaching vocational school, and one year part-time at Georgia Southwestern College. She obtained her Doctorate of Education (Ed.D.) in 1975 and is considered to be a good teacher.

2. Ora Jane Sawyer—Ms. Sawyer has been employed at Georgia Southwestern College since 1961. She holds a position of Assistant Professor and since 1976 has been the Director of the Cooperative Program. When she was teaching, she taught typing, shorthand, transcription, business communications, and some graduate courses. Ms. Sawyer has an

Ed.S. degree which is the equivalent of a doctorate degree but for a thesis.

3. Winona Sisk—Ms. Sisk is an Assistant Professor of Business Administration and teaches business law, insurance, real estate, marketing management, sales management, and principles of transportation. She came to Georgia Southwestern College in 1963 and received her M.Ed. in 1966. She has one year of study toward her doctorate. Her experience includes six years of public school teaching before coming to Georgia Southwestern.

4. Rebecca Parks—Ms. Parks is an Assistant Professor of Business Administration, holds an Ed.S. degree, and has worked at Georgia Southwestern College since 1968. She had ten years of teaching experience on the college level before coming to Georgia Southwestern and teaches all levels of accounting.

5. Mary Reeves—Ms. Reeves is an instructor of physical education. She came to Georgia Southwestern College in 1974 and received her masters degree in 1976. She teaches skill courses and classroom courses. In addition to her teaching, she also spends 12–14 hours per week organizing and supervising intramural sports.

6. Leewynn Finklea—Ms. Finklea is an Associate Professor of English and is the Director of Alumnae Affairs. She has a Masters of Education and has taught at Georgia Southwestern College since 1952.

489 F.Supp. at 1327. The court found that Dr. McKinney, Ms. Sawyer, Ms. Sisk, and Ms. Parks, could be compared with one or more of the following males in the business department:

1. Dr. Jackson M. McNeil—Dr. McNeil taught principles of accounting, business machines, typing, shorthand, and materials and methods in business from 1968 through 1974. He received

---

**6.** DOL also claimed that the College's overall subjective system violated the Act. The court below agreed and stated that it was inclined to order injunctive relief throughout the Georgia state system of higher education. Later, how-

ever, the court determined that, since plaintiff had offered no "practical guidance," no injunctive relief would be ordered on a system-wide basis.

his Ed.D. shortly after coming to Georgia Southwestern and was promoted to Associate Professor in only three years. Dr. McKinney still has not been promoted to Associate Professor. Dr. McNeil had two years experience teaching in a junior college and one year teaching at the University of Mississippi. In his five years at the defendant College Dr. McNeil was paid $4,900.00 more than Dr. McKinney in 1968–69 (in which year neither had received their doctorate), $4,400.00 more in 1969–70, $4,700.00 more in 1970–71, and in 1971–72, $5,400.00 more in 1972–73, and $5,700.00 more in 1973–74. In 1976–77, the year that Dr. McKinney received her Ph.D, she was paid $12,600.00, only $100.00 more than Dr. McNeil was paid in 1968–69 when he first came to Georgia Southwestern. He also received substantially more than Ms. Sawyer, Sisk, and Parks.

2. Dr. Clifton A. Baxter—Dr. Baxter came to Georgia Southwestern College in 1972 with only part-time teaching experience. He obtained his Ed.D. in 1974 with a specialty in business data processing and was promoted to Associate Professor the following year. He teaches or has taught business law, business communication, accounting, introduction to computer application, Fortran IV programming and a variety of other courses. During 1973–74, at a time when neither had yet received a doctorate degree, Dr. Baxter was paid $900.00 more than Dr. McKinney. During each succeeding year each received salary increases but Dr. Baxter stayed ahead of Dr. McKinney. In 1977–78, when both held doctorates, Dr. Baxter received $3,100.00 more than Dr. McKinney. The disparity in Dr. Baxter's salary and that of Ms. Sawyer ranged from $600.00 in 1973–74 (before Dr. Baxter received his Ed.D.) to approximately $4,700.00 in 1977–78. Dr. Baxter's starting salary in 1973–74 was $1,000.00 more than Ms. Sisk's salary during that year.

3. Jerry Rowland—Mr. Rowland is an Assistant Professor of Business Administration who came to Georgia Southwestern College in 1970–71. His highest degree is a M.B.A. obtained in 1968; he teaches in the area of marketing and management. Mr. Rowland began at a salary of $2,100.00 to $2,200.00 greater than that of Dr. McKinney, Ms. Sisk and Ms. Sawyer, all of whom had comparable or higher degrees. In 1977–78 Mr. Rowland was paid $2,700.00 more than Ms. Sisk, and approximately $1,500.00 more than Ms. Sawyer.

4. James Faircloth—Mr. Faircloth is an Associate Professor and teaches all levels of accounting. He holds a Masters of Science in accounting and has received his Certified Public Accountant (CPA) license. His only teaching experience was as a graduate assistant at Florida State University; however, he does have several years experience in the practice of accounting. He began working at Georgia Southwestern College in 1969–70 at a higher salary than Ms. Parks was then receiving. His salary has continued to exceed that of Ms. Parks by $1,500 to $3,000 through 1977–78 when both taught substantially the same courses.

5. William Fisch—Mr. Fisch holds a M.B.A. degree and a C.P.A. certificate. He came to Georgia Southwestern College in September 1968, left in 1971, and returned in 1976. He has no prior teaching experience, is an Assistant Professor and teaches all levels of accounting; however, he did not teach advanced accounting until the summer of 1978. Mr. Fisch has taken courses from Dr. McKinney and Ms. Sisk but has always been paid at least $1,000.00 more per year than Dr. McKinney. Since his return in 1976, Mr. Fisch has been paid $600 to $900 more per year than Ms. Parks.

*Id.* at 1327–28.

In the Physical Education Department, the court found that Ms. Reeves could be compared to Mr. Robert J. Voight who was hired as a physical education instructor and basketball coach in 1977–78. Voight holds a masters degree. He was paid almost $6,000 more than Ms. Reeves during 1977–78 according to plaintiff's exhibit, or $400

more than Ms. Reeves according to defendants' exhibit. In each of her years of teaching, Ms. Reeves was paid significantly less than all the male instructors and professors in the Physical Education Division. In 1977–78, after she received her master's degree, Reeves was still paid significantly less than the males, most of whom also held only a master's degree. *Id.* at 1328.

Regarding Ms. Finklea, the court's only finding was: "Likewise, Ms. Finklea has been paid a significantly lower salary than her male counterparts." *Id.* at 1329.[7]

Thus, the court determined that the defendants had violated the Act in these six instances and that this violation had been willful. The court ordered back pay from a period beginning three years prior to the commencement of the suit and ordered defendant College to "comply hereafter with the provisions of the Equal Pay Act."

At trial, it was brought to the court's attention that during the time that Dr. Jacquelyn McKinney was making complaints about unequal pay to the college administration, her husband, Dr. Max McKinney, was asked to resign the position of Math Division Chairperson. The court found that this action was taken in direct retaliation for Dr. Jacquelyn McKinney's complaints, in violation of 29 U.S.C. § 215(a)(3) of the Act, which makes it unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify

in any such proceeding, or has served or is about to serve on any industry committee.

The court allowed DOL to amend the complaint to include a retaliation claim, and ordered back pay and reinstatement for Dr. Max McKinney.

## II. PLAINTIFF'S PRIMA FACIE CASE

In order to make out a prima facie case under the Act, the plaintiff must show "that an employer pays different wages to employees of opposite sex 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' " *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). The jobs held by employees of opposite sexes need not be identical, rather they must only be "substantially equal." *Id.* at 203–04 n. 24, 94 S.Ct. at 2232 n. 24, *Hodgson v. Behrens Drug Company*, 475 F.2d 1041, 1049 (5th Cir.), *cert. denied*, 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973).[8] It is important to bear in mind that the prima facie case is made out by comparing the *jobs* held by the female and male employees and showing that these jobs are substantially equal, not by comparing the skills and qualifications of the individual employees holding those jobs.[9] *Hein v. Oregon College of Education*, 718 F.2d 910, 914 (9th Cir.1983); *Peltier v. City of Fargo*, 533 F.2d 374, 377 (8th Cir.1976); *EEOC v. McCarty*, 578 F.Supp. 45, 47 n. 1 (D.Mass.1983); 29 C.F.R. § 800.125. The plaintiff carries the burden of proof on this issue. *Corning*

---

**7.** In actually assessing back pay the court compared Dr. Jacquelyn McKinney with Dr. Baxter and Mr. Rowland, Ms. Parks with Mr. Faircloth (with an adjustment for the fact that Parks had a twelve-month contract and Faircloth had a nine-month contract), Ms. Sawyer with Dr. Baxter and Mr. Rowland (with an adjustment for the fact that in 1981 Parks became Director of the Cooperative Program), Ms. Sisk with Mr. Rowland, Ms. Reeves with Mr. Voight, Ms. Finklea with Mr. Powers (with an adjustment for the fact that Finklea had a twelve-month contract and Powers had a nine-month contract), and Dr. Max McKinney with Dr. Russell.

**8.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**9.** A comparison of the individual employees, as opposed to jobs, is relevant only to defendant's rebuttal burden as discussed in section III, *infra*.

*Glass Works,* 417 U.S. at 195, 94 S.Ct. at 2228. The court below determined that plaintiff met this burden. Our role is to decide if this determination was "clearly erroneous" pursuant to Federal Rule of Civil Procedure 52. *Morgado v. Birmingham-Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1188 (11th Cir.1983), cert. denied, — U.S. —, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). *Hein v. Oregon College of Education,* 718 F.2d at 913; *Orahood v. Board of Trustees,* 645 F.2d 651, 654 (8th Cir.1981).

■ The district court compared each of the six women claimants with one or more male comparators.[10] All of the teachers[11] who were compared were within the same academic division, taught students of approximately the same level (i.e., undergraduates and some two-year students and graduate students), and had course loads of approximately fifteen hours per week, with the exception of physical education teachers who carried slightly more hours.[12] It is within this context that the court found that the jobs of the claimants and their comparators were substantially equal.[13] We now turn to each individual comparison.

### 1. *Dr. Jacquelyn McKinney*

■ Dr. McKinney and her comparators, Dr. Baxter and Mr. Rowland, were all in the Business Administration Division. McKinney taught business law, typing, shorthand, business communications, secretarial accounting, and office management; Baxter taught business law, business communications, accounting, introduction to computer application, Fortran IV, and programming; Rowland taught in the area of marketing and management. McKinney and Baxter both taught primarily in the business education area of the Business Administration Division. Dr. Baxter testified that women and men in the business education area employed the same talent and effort, and had the same responsibility. This assertion stands unrebutted. *See Hein,* 718 F.2d at 918. Appellants contend that Rowland is an improper comparator because he taught in the administration area of the Business Administration Division while McKinney taught education courses. We do not find this difference compelling. Virtually all teachers in a higher education setting will teach different courses. The court below did not find the alleged differences between administration and education courses significant, given the commonality of discipline. We agree. Appellants' argument seems to be premised on the allegation that appellee did not meet its burden of proving that equal skill is needed to teach the courses taught by McKinney and those taught by Rowland. We hold, however, that plaintiff can meet its burden of going forward by showing that the teachers compared are in the same discipline and that their job is to teach classes to students in that disci-

---

**10.** For the sake of convenience, we will use the word "claimant" to refer to each of the six women employees of appellant College whom appellee alleges has been discriminated against by appellants, and the word "comparator," adopted by the Ninth Circuit in *Hein,* 718 F.2d at 912–13, n. 2, to refer to the males who allegedly were paid more than claimants for substantially equal work. The comparators here are the males whose salaries were used to determine the claimants' back pay.

Plaintiff fulfills its burden by showing that an employee has been discriminated against in terms of pay vis-a-vis one employee of the opposite sex. Defendant cannot defeat this showing by alleging that plaintiff did not identify all employees doing substantially equal work. Rather, if defendant feels that there are other equally appropriate comparators, it must bring

them to the attention of the court in order for an accurate determination of back pay to be made. *See Hein,* 718 F.2d at 918 (use of a single comparator is not clearly erroneous unless an appropriate comparator is wrongly excluded from comparison with the plaintiff; defendant has not suggested anyone else with whom plaintiff should have been compared).

**11.** As discussed *infra* the court erroneously compared some teachers with nonteachers.

**12.** There is little emphasis on research or publishing at appellant College.

**13.** Contrary to appellants' assertion, appellees do not assert that "teaching is teaching" as the basis of their claim.

pline.[14] To require plaintiff to do more would be unrealistic, for it would require plaintiff to prove the absence of any conceivable difference between teaching class X and teaching class Y, without defendant even having to allege specific differences. Rather, defendants must point out the differences that they contend exist between teaching different courses. In the present case, appellants have pointed to no such differences in regard to teaching courses within the Business Administration Division. Nor have the appellants alleged that there were substantially different course loads or student loads among the teachers who were compared. *See Hein* 718 F.2d at 919 (plaintiff's failure to prove that she taught same number of students or courses does not preclude a finding of substantial equality where nothing in record suggests that such a disparity exists; record does not support defendant's contention that it takes greater skill to teach higher level courses).[15]

Appellants also argue that Dr. Baxter was coordinator of the Business Education Division and, as such, was not a proper comparator. The record, however, substantiates appellee's claim that any additional duties are accurately characterized as ephemeral and took up an insignificant amount of time. *See Hodgson v. American Bank of Commerce*, 447 F.2d 416, 422 (5th Cir.1971); 29 C.F.R. § 800.128.[16]

We conclude that the district court's finding of substantial equality of jobs between McKinney and her comparators is not clearly erroneous.

**2. *Rebecca Parks***

 Ms. Parks taught in the Business Administration Division,[17] teaching all lev-els of accounting. Her comparator, James Faircloth, also taught all levels of accounting. The court found that the two taught substantially the same courses.[18] Appellants claim that this finding is insufficient to establish a prima facie case because Faircloth was an associate professor while Parks was an assistant professor. We disagree. Appellants are not arguing that the jobs that Parks and Faircloth performed were different, only that the individuals holding the same jobs had different titles. This difference may be cognizable as a factor "other than sex" which defendant can show as an affirmative defense, but it does not affect plaintiff's prima facie case. Appellants also contend that the court erred by failing to compare Ms. Parks with Mr. Fisch, another accounting teacher. We find this claim disingenuous. Mr. Fisch has taught accounting only part time since 1978, when he began managing the Small Business Institute. Appellants' claim regarding other claimants and comparators is that teachers and nonteachers do not perform substantially equal work.

We conclude that the record supports the finding that Parks and Faircloth were performing substantially equal work.

**3. *Ora Jane Sawyer***

 Ms. Sawyer has been the director of the Cooperative Program within the Business Administration Division since 1976. According to the appellee, this position involves recruiting students and coordinating with employers to place the students in jobs related to their academic majors, for which they receive academic credit. Prior to accepting this position, Sawyer taught typing, shorthand, transcription, business communication, and some gradu-

---

**14.** We do not mean to imply that plaintiff could never prove that teachers of different disciplines have substantially equal jobs, only that the question of the requirements for such a showing is not before us.

**15.** It cannot be argued that Baxter's and Rowland's jobs require more education than McKinney's since she has the same academic credentials as Baxter, and a higher degree than Rowland.

**16.** See notes 22 and 23 *infra*.

**17.** Parks taught in the administration area.

**18.** To the extent that the courses of the two differ, Parks taught higher level courses than Faircloth.

ate courses. Her comparators are Dr. Baxter and Mr. Rowland. For the reasons discussed in connection with Dr. McKinney, we hold that this was a proper comparison for the period during which Sawyer was teaching, from the beginning of the liability period in 1975 until the fall of 1976. We agree with appellants, however, that Baxter and Rowland are not proper comparators with Sawyer for the period after she left teaching and began working with the cooperative program. Teachers cannot be compared with nonteachers under the Equal Pay Act.[19] Appellee contends that Mr. Fisch, who heads the Small Business Institute may have been a better comparator for the years that Sawyer administered the Cooperative Program. We therefore remand to the district court to determine if Fisch is an appropriate comparator.

4. *Wynona Sisk*

Ms. Sisk taught business law, insurance, real estate, marketing management, sales, management, and principles of transportation in the Business Administration Division. Her comparator is Mr. Rowland. Appellants point to no specific fallacy in this comparison; indeed, both taught in the administration area of the Business Administration Division and they have the same degree—two issues that appellants stressed in other comparisons. Rather, appellants seem to be complaining that the court did not make adequately specific findings about the equal nature of the jobs that the two performed. For the reasons discussed above, we find such an argument unpersuasive in view of the similarity of the courses taught. Thus, Rowland was a proper comparator for Sisk.

5. *Mary Reeves*

Ms. Reeves taught skill and classroom courses in the Physical Education Division, and coached, organized, and supervised the intramural athletics program. Her comparator is Mr. Voight, who in addition to his classroom duties, coached the intercollegiate basketball team. The chairperson of the Physical Education Division testified that Reeves' and Voight's teaching duties were "fairly similar." Appellants claim that Voight's coaching job involved more responsibility than Reeves' in that he scheduled games, transported the team off campus, was responsible for them while on trips, administered a budget of eight thousand dollars, and was potentially subject to dismissal if too many games were lost.[20] "Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 800.129. We cannot say the district court was clearly erroneous in determining that Reeves and Voight had substantially equal responsibility in view of the fact that Reeves was responsible for scheduling, obtaining referees, administering a $2,500 budget,[21] and supervising a number of different intramural sports involving hundreds of students. Indeed, the chairperson of appellant College admitted that the College did not have "a real terrific [intercollegiate] sports program" and that there was "not a great deal of pressure on the basketball coach." He also admitted that the intramural program was just as important as the intercollegiate program because it fulfilled the needs of more students. Thus, we find the record supports the conclusion that Reeves was properly compared with Voight.

6. *Leewynn Finklea*

Ms. Finklea taught in the English department for twenty years, teaching primarily English and French. Until the mid-

19. By "teacher" we mean someone whose actual job is to teach classes to students, not someone who has the title of "teacher" or "professor." Of course, someone labeled a teacher could perform the same actual tasks as someone not given that label. There has been no such showing here.

20. Appellants admit that it is unlikely that Voight would be dismissed for losing games.

21. Although Voight managed a larger budget, we do not find this difference significant enough to make the district court's decision clearly erroneous.

sixties she was the head of that department. In the spring of 1968, she began doing public relations work at the College on a full time basis, but continued to teach a developmental reading course once or twice a year. The College listed her as an Associate Professor in the English Department on a one-third basis. She was compared with Mr. Powers who taught English. For the reasons set forth under the discussion of Ms. Sawyer, employees who teach cannot be compared with employees who do not teach. Appellee, however, claims that Jerry Williams is an appropriate comparator. Mr. Williams was paid from the Mathematics Division budget, but like Ms. Finklea, performed primarily administrative tasks and taught only one class. Thus, we must remand to the district court to determine if Williams and Finklea performed substantially equal work.

## III. DEFENDANT'S AFFIRMATIVE DEFENSES

 Once plaintiff has established a prima facie case, the burden shifts to the employer to prove that the difference in pay is justified by one of the four exceptions in the Equal Pay Act: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex. 29 U.S.C. § 206(d)(1); *Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229. Defendant must show that the factor of sex provided no part of the basis for the wage differential. 29 U.S.C. § 800.142. This is a question of fact subject to the "clearly erroneous" standard of review. *Hein*, 718 F.2d at 913. Here, appellant originally attempted to justify pay disparities between female and male employees on the basis of a merit system, and on the allegedly sex-neutral results of supply and demand—a factor other than sex.

 Appellants' merit system defense need not detain us for long, as appellants conceded at oral argument before this court that their alleged "merit system" did not qualify as such under this circuit's recent opinion in *Morgado v. Birmingham-Jefferson County Defense Corps*, 706 F.2d 1184, 1188–89 (11th Cir.1983), given our focus on the requirement of a "system" which presents a means or order of advancement or reward for merit. No such system emerged from the evidence offered in the present case. As the court below found:

Here, any merit system operated in an informal and unsystematic manner. No teachers were aware of any system and evaluations were carried out by the Dean and division heads on an *ad hoc* subjective basis. Salary and raise decisions were based on personal, and in many cases, ill-informed judgments of what an individual or his or her expertise is worth.

489 F.Supp. at 1330. *See also Brennan v. Victoria Bank & Trust*, 493 F.2d 896, 902 (5th Cir.1974) ("subjective evaluations of the employer cannot stand alone as a basis for salary discrimination based on sex"); *Hodgson v. Brookhaven General Hospital*, 436 F.2d 719, 726 (5th Cir.1970) (the merit system exception, "if not strictly construed against the employer, could easily swallow the rule").

 Appellants next argue that, regardless of the fact that the alleged "merit system" does not qualify as such, the components of it, various superior qualities of the comparators, justify their higher salaries. Even if such factors could qualify as "factors other than sex," appellants do not explain what these superior qualities are. *See Morgado*, 706 F.2d at 1189.[22] On the contrary, the record is filled with numerous details showing that, on the whole, claimants had equal or superior qualifications

---

**22.** The only concrete difference listed is that Dr. Baxter is the coordinator of the business education area. Appellants, however, proffer no evidence that Baxter's position as coordinator explains his higher salary. In fact, Dr. Green, Baxter's superior, testified that he did not assign a particular value to the job of coordinator above Baxter's regular contract.

and seniority and were highly rated as teachers.

■ Appellants' supply and demand defense also fails. Appellants claim that they paid professors according to what the market demanded. They strenuously argue that by "supply and demand" they do not mean that they paid women less because women were willing to accept lower salaries as they could not command higher salaries elsewhere. Indeed, the argument that supply and demand dictates that women *qua* women may be paid less is exactly the kind of evil that the Act was designed to eliminate, and has been rejected. *See Corning Glass Works,* 417 U.S. at 205, 94 S.Ct. at 2233; *Victoria Bank and Trust,* 493 F.2d at 902; *Brennan v. City Stores, Inc.,* 479 F.2d 235, 241 n. 12 (5th Cir.1973); *Brookhaven General Hospital,* 436 F.2d at 726. Appellants assert that "the marketplace for higher education dictates different salaries for different individuals based upon simple competition, differences in backgrounds, or differences in subject matter taught." Merely claiming that teachers of certain subjects or with certain qualifica-

tions are worth more does not explain away discrepancies absent an explanation of how those factors actually resulted in an individual employee earning more than another—especially when the evidence shows that women with equal or greater qualifications who taught the same subjects were paid less.[23] Moreover, as the court below pointed out "any credibility that the market force defense might have is diminished by the fact that those charged with hiring did not inform themselves of the market rates of particular expertise, experience, or skills. The hiring process is devoid of any bargaining over initial salaries, a process one would normally expect in the context of a competing market place." 489 F.Supp. at 1331.

Thus, none of appellants' affirmative defenses explains the pay differentials shown by appellee's prima facie case.

## IV. RETALIATION AGAINST DR. MAX MCKINNEY

■ Appellants claim that the evidence does not support the trial court's findings that Dr. Max McKinney was asked to re-

---

**23.** The only specific example that appellants give of market forces at work is the claim that Dr. Baxter's salary was raised to counter an offer from another school. This lone example is far from supporting the contention that market factors can explain all the differences between female and male salaries. Moreover, Baxter was paid more than most female faculty members even before the outside offer. It was not clearly erroneous for the district court to reject the testimony which explained Baxter's higher salary by this outside offer.

Appellants also claim that business administration teachers are "traditionally" paid more than business education teachers. The court apparently rejected this unsubstantiated testimony. At any rate, the only claimants in the business education area who were compared with a male in the business administration area were Dr. McKinney and Ms. Sawyer. McKinney and Sawyer were compared with both Dr. Baxter in business education and Mr. Rowland in business administration. We note that Rowland made less than Baxter, thus adding more doubt to appellants' education versus administration distinction. In addition, if Baxter is the only appropriate comparator, claimants are entitled to more back pay.

Appellants finally claim that holding a Certified Public Accountant license explains the pay

differences between some faculty members. This also appears pretextual in light of the facts. The court found:

> While the defendants considered a C.P.A. license to be the equivalent of a terminal degree in the field of accounting, this results from Georgia Southwestern College having no hope of attracting a Ph.D. in accounting. As valuable as a C.P.A. certificate is in the business world, a C.P.A. certificate is not a degree at all but merely a license certificate evidencing knowledge and skill in applying the principles of accounting in accordance with the concepts of the American Society of Certified Public Accountants. The certificate is a consideration in evaluating Mr. Fisch and Mr. Faircloth for positions and salaries, but so is Ms. Parks' advanced education and teaching experience to which the defendant apparently gave little or no weight.

489 F.Supp. at 1328. Again, the appellants hold the burden of proving to the trier of fact that this is not just an ex post facto attempt to find differences between male and female faculty and then use those differences to explain unequal pay. Appellants' failure to explain why women claimants' credentials never entitled them to extra salary is evidence of such pretext.

sign his position as chairperson of the math department in retaliation for his wife's complaints regarding unequal pay.[24] We disagree. The trial court listened to both sides' testimony as to why Dr. Max McKinney was asked to resign. The court credited the testimony of Dr. Jacquelyn McKinney that Dr. Green, chairperson of the Business Administration Division, told her that he "didn't want to lose a neighbor" because of her complaints and that both the McKinneys' jobs were at stake. In addition, Dr. Cofer, Max McKinney's supervisor, testified that he told Max McKinney to "make peace" with Dean Johnson over this issue. In contrast, the court found that appellants' witnesses, Dr. King, Dr. Cofer, and Dean Johnson, were unable to give "a satisfactory or uniform explanation of the reason for the requested resignation. Nor could they explain why if Dr. McKinney was performing unsatisfactorily, he was promoted to full professor in 1976." 489 F.Supp. at 1329. We do not find these conclusions "clearly erroneous." Fed.R. Civ.P. 52(a). Rather, we agree with the court below that the testimony at trial, coupled with the timeliness of the action against Dr. Max McKinney, amply support the court's conclusion.[25]

■ Next, appellants argue that the trial court abused its discretion in allowing appellee to amend the complaint after trial to include the retaliation charge. Under Federal Rule of Civil Procedure 15(b), issues not raised by the pleadings which are tried by implied consent of the parties "shall be treated in all respects as if they had been raised in the pleadings," and such issues may be added to the pleadings by amendment. Here, the issue of why Dr.

Max McKinney was asked to resign was raised by Dr. Jacquelyn McKinney during the first day of trial. As appellee points out, during the trial every official implicated in this action testified on the subject. In fact, appellants solicited testimony on this issue. Accordingly, we find no abuse of discretion in the court's allowing or even suggesting the amendment.

## V. WILLFULNESS OF VIOLATION

The court below determined that appellants' violations of the Equal Pay Act were willful, entitling claimants to a three year statute of limitations, rather than the two years allowed for violations that are not willful. 29 U.S.C. § 255(a).[26] The complaint was filed February 14, 1978, and appellee is claiming a back pay period commencing on February 14, 1975. The court below found that the appellants "knew of the Equal Pay Act since 1972 when their custodial employees were investigated and they knew that the Act applied to professional employees at least since 1974—the first investigation [of the faculty]." 489 F.Supp. at 1331.

Appellants argue that the applicability of the Act to state employees was unknown in view of the Supreme Court's 1976 decision in *National League of Cities v. Usery*, 426. U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976) (wage and hour provisions of the Fair Labor Standards Act not applicable to certain state employees who perform integral governmental functions), *overruled*, *Garcia v. San Antonio Metropolitan Transit Authority*, —— U.S. ——, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), until the Court's decision in *EEOC v. Wyoming*, 460

---

**24.** Dr. Max McKinney had been chairperson of the math department since 1966. He was asked to resign in 1977.

**25.** We also disagree with appellants that the action could not have been retaliatory because DOL did not disclose the names of those whose complaints prompted the 1974 investigation. Appellants were obviously aware of Dr. Jacquelyn McKinney's complaints about unequal pay. The mere fact that DOL did not hand appellants a piece of paper listing Dr. Jacquelyn McKinney

as one of those making equal pay complaints does not shield appellants from liability.

**26.** 29 U.S.C. § 255(a) provides that an action may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983) (nondiscrimination statutes enforced through the Fair Labor Standards Act are applicable to state governments).[27] In addition, appellants argue that they cannot be charged with knowledge because the regulations governing the Act had not been amended since 1967 to reflect changes in the law or judicial construction of the Act; thus there was no way for them to be on notice as to what the Act meant as applied to them.

The standard for determining willfulness, however, does not require such guidance. Rather, a violation is willful if the employer knows or has reason to know that his or her conduct is governed by the Act. *Brennan v. Heard,* 491 F.2d 1 (5th Cir.1974). An employer need not proceed with knowledge that his or her actions are contrary to the Act in order for willfulness to be found. *Id.* An action is "willful" if the employer knew that the Act was "in the picture" regardless of the defendant's good faith. *Coleman v. Jiffy June Farms, Inc.,* 458 F.2d 1139, 1142 (5th Cir.1971), *cert. denied,* 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). *See also Marshall v. A & M Consolidated Independent School District,* 605 F.2d 186, 190–91 (5th Cir. 1979) (actual awareness of the law is unnecessary to establish willfulness; knowledge is imputed). Appellants' dealings with the DOL afford sufficient proof that appellants had this requisite knowledge. Moreover, the liability period in question is from February 14, 1975 to February 13, 1976, the third year prior to commencement of this lawsuit. *National League of Cities* was not decided until June 24, 1976. Obviously, appellants cannot use a 1976 case to explain why its actions in 1975 were not willful.

For the foregoing reasons, the findings of the district court are AFFIRMED with respect to claimants Dr. Jacquelyn McKinney, Rebecca Parks, Wynona Sisk, Mary Reeves, and Dr. Max McKinney; and RE-MANDED for further findings with regard to Ora Jane Sawyer and Leewynn Finklea.

---

27. In 1979, the former Fifth Circuit determined that the provisions of the Equal Pay Act are applicable to state governmental entities. *Pearce v. Wichita County,* 590 F.2d 128, 131–32 (5th Cir.1979).