Judy RAMSEY, Plaintiff,

v.

**STATE OF ALABAMA PUBLIC SERVICE COMMISSION, Defendant.**

**Civil Action No. 96-T-275-N.**

United States District Court, M.D. Alabama, Northern Division.

Feb. 25, 2000.

Samuel Fisher, Joel S. Isenberg, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, C. Paige Williams, Energen Resources Corporation, Birmingham, AL, for Judy Ramsey.

Alvin T. Prestwood, Richard D. Lively, Volz, Prestwood & Hanan, PC, Montgomery, AL, Daniel L. Feinstein, Chambless, Math, Moore & Brown, Montgomery, AL, for State of Alabama Public Service Commission.

Alvin T. Prestwood, Richard D. Lively, William Joseph Baxley, Joel Evan Dillard, Baxley, Dillard, Dauphin & McKnight, Birmingham, AL, Daniel L. Feinstein, Chambless, Math, Moore & Brown, Montgomery, AL, for Jan Cook.

## ORDER

MYRON H. THOMPSON, District Judge.

This lawsuit—in which plaintiff Judy Ramsey charged that defendant Alabama Public Service Commission discriminated against her in her wages, in violation of the Equal Pay Act, 29 U.S.C.A. § 206(d)(1)—is before this court on remand from the United States Court of Appeals for the Eleventh Circuit. By order of January 15, 1999, the appellate court reversed this court's denial of Ramsey's post-trial motion for judgment as a matter of law with respect to her Equal Pay Act claim, and instructed that appropriate damages should be awarded to her. With this order, this court now determines how much compensation Ramsey should receive under the Equal Pay Act.

## I. BACKGROUND

Ramsey began working as a Pipeline Safety Inspector I for the Commission on September 23, 1993. At the time she was hired, she was the first woman ever to

hold that position. Her starting salary was $ 20,615.40, or $ 792.90 biweekly. Though her performance evaluations reflected that her work was in the "exceeds standards" category, she was terminated by the Commission at the end of her initial six-month probationary period, on March 25, 1994.

On May 9, 1995, the Commission hired a man in the position Ramsey had occupied. His starting salary was $ 31,408.00, or $ 1,208.00 biweekly—$ 10,792.60 per year, or $ 415.10 biweekly more than Ramsey's.

After first exhausting her administrative remedies with the Equal Employment Opportunity Commission, Ramsey filed this federal lawsuit against the Alabama Public Service Commission on February 20, 1996.[1] Ramsey claimed, among other things, that the Commission discriminated against her on the basis of her sex and race. She based her legal challenges on two federal statutes: she claimed, first, that the Commission wrongfully terminated her on the basis of her sex and race, in violation of 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, popularly referred to as Title VII of the Civil Rights Act of 1964, as amended; and, second, that the Commission discriminated against her in her wages, thereby violating the Equal Pay Act. The jurisdiction of this court was properly invoked under 28 U.S.C.A. §§ 1331 and 1343, and 42 U.S.C.A. § 2000e–5(f)(3).

On May 1, 1997, with a visiting District Judge presiding, a jury found that the Commission was liable under Title VII for discriminating against Ramsey on the basis of race in its decision to terminate her; the jury, however, returned a verdict in favor of the Commission as to Ramsey's claims of sex-based discrimination with regard to both her termination and her wages. Ramsey filed a post-trial motion for judgment as a matter of law on her claims of sex-based discrimination with regard to both her termination and her wages, and the visiting District Judge denied the motion.

Judgment was then entered in favor of Ramsey as to her race-discrimination claim and in favor of the Commission as to both sex-discrimination claims; and, as a remedy for Ramsey's race discrimination claim, the Commission was ordered to reinstate Ramsey to her position of Pipeline Safety Inspector I and to give her back pay from the date of termination until the date of his order. The Commission reinstated Ramsey, but rather than pay her what her male successor had been paid, it continued to pay her at the same salary at which she had originally been hired.

Ramsey appealed from the district court's judgment, and the United States Court of Appeals for the Eleventh Circuit concluded as a matter of law that the Commission had violated Ramsey's rights under the Equal Pay Act. The appellate court issued a mandate ordering the district court to enter judgment in favor of Ramsey with respect to her Equal Pay Act claim and to award damages accordingly.

On remand, this case was reassigned to the undersigned District Judge, and this court entered an appropriate judgment in favor of Ramsey on her Equal Pay Act claim, and ordered the parties to submit briefs and evidence on the issue of the amount of damages that should be awarded under the Act. The court does not now reconsider the issue of liability under the Equal Pay Act, but rather considers only what relief is appropriate.

## II. DISCUSSION

The Equal Pay Act prohibits an employer from discriminating on the basis of sex "by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work." 29 U.S.C.A. § 206(d)(1).[2]

---

1. Ramsey also sued Public Service Commissioner Jan Cook. Ramsey did not prevail on her claims against Cook, and those claims are no longer at issue in this litigation.

2. 29 U.S.C.A. § 206(d)(1) states in full:
 "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which

Under 29 U.S.C.A. § 216(b), employers who violate the Act "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, ... and in an additional equal amount as liquidated damages." The court will therefore take up the amount of back pay owing to Ramsey first, and then will address the issue of liquidated damages.

### A. Back Pay

#### 1. Timing of the Equal Pay Act Violation

Because Ramsey can be awarded back pay for only the period during which her rights under the Equal Pay Act were being abridged, the first question in determining how much back pay is owed is when the Equal Pay Act violation began. Unfortunately, the Eleventh Circuit stated only that the Commission violated the Act, and provided no guidance about when the violation occurred or which facts were central to its ruling. Indeed, after listing the parties, the causes of action, and the issues before the court for appellate review, the appellate court's January 15, 1999, order concludes with only this terse statement:

> "After reviewing the record, we summarily affirm the district court's rulings and judgment with one exception: we reverse the district court's denial of Ramsey's renewed motion for judgment as a matter of law with regard to her Equal Pay Act claim and remand this case with directions that the district court enter judgment for Ramsey on that claim and award damages accordingly."

Lacking more specific instruction from the Eleventh Circuit, this court must essentially divine, from the record now before it, what actions the Eleventh Circuit believed the Commission took in violation of the Equal Pay Act, and for which period of time back pay is therefore due.

The Commission contends that it could not have been in violation of the Equal Pay Act before it hired Powell to replace Ramsey. As long as it was not paying one employee a higher wage for the same work than it was paying an employee of the opposite sex, the Commission argues, there could be no violation. The Commission supports this argument with evidence that, up until it hired Powell, it paid all employees in the position of Pipeline Safety Inspector I the same salary, regardless of sex. Therefore, according to the Commission, Ramsey was not being paid during this period "at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex," 11 29 U.S.C.A. § 206(d)(1), and no remedy should be available to her under the Equal Pay Act.

 Though this reasoning might make intuitive sense, an analysis of the regulations promulgated by the United States Department of Labor, as well as the relevant case law, leads the court to reject the Commission's argument. It is well-established that a plaintiff may establish an Equal Pay Act violation by comparing her wages to that of an employee of the opposite sex who either preceded or succeeded her; and, when the higher-paid comparator replaces the plaintiff (rather than preceding her), the Equal Pay Act violation obtains during the period when the plaintiff receives a lower wage, even though the comparator has not yet been hired. *See, e.g., Arrington v. Cobb County*, 139 F.3d 865, 876 n. 22 (11th Cir.1998)

such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made

pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

("The Equal Pay Act also clearly applies when a plaintiff alleges an inequality between her pay and that of her successor."); *Pearce v. Wichita County*, 590 F.2d 128, 133 (5th Cir.1979) ("[E]mployees whose pay is the subject of comparison may hold jobs in succession as well as simultaneously. Thus, [defendant-]appellant has no cause to complain of the comparison between [the plaintiff] and her successor.");[3] *see also EEOC v. First Citizens Bank*, 758 F.2d 397, 402 (9th Cir.1985) ("The Equal Pay Act does not require that jobs being compared be performed simultaneously; it also encompasses situations where an employee of one sex is hired for a particular job to replace an employee of the opposite sex. Violations may be proved by comparing the woman's salary to that of her male successor. Backpay would be awarded for the period prior to the male's hiring.") (citations omitted); *id.* ("It would thwart the purposes of the Act to limit recovery only to the period after the hiring of [the higher-paid male employees]. The language of the Act does not support such a limitation."); *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1260 (7th Cir. 1985) ("The salary paid to a successor who performs substantially the same work may provide a basis for an Equal Pay action").

This interpretation of the Equal Pay Act is also supported by 29 C.F.R. § 1620.13(b)(4), which states:

"If a person of one sex succeeds a person of the opposite sex on a job at a higher rate of pay than the predecessor, and there is no reason for the higher rate other than difference in gender, a violation as to the predecessor is established and that person is entitled to recover the difference between his or her pay and the higher rate paid the successor employee."

This regulation does not state that the plaintiff may only recover damages if she is later reinstated and works contemporaneously with the opposite-sex comparator;

instead, it clearly indicates that the plaintiff may recover damages even if there is never a period of time when she and her comparator work for unequal wages at the same time.

▪ Therefore, the court concludes that the violation of Ramsey's rights under the Equal Pay Act began not when Powell was hired at a higher salary, but rather when she was hired for the first time at a salary lower than that which she would have received had she been male. The portion of that time for which Ramsey may receive a backpay award turns on the applicable statute of limitations, an issue to which the court now turns its attention.

### 2. Statute of Limitations

29 U.S.C.A. § 255(a), the statute of limitations for all claims arising under the Equal Pay Act, provides that a lawsuit,

"may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."

Thus, the limitations period for claims arising under the Equal Pay Act is two years, except in cases involving "willful" violations, for which a three-year limitations period attaches. Whether Ramsey can recover damages for the entire period of her employment with the Commission, or only for the two years prior to her lawsuit, thus depends on whether the Commission's violations of the Equal Pay Act were willful.

Ramsey argues that the court should apply the so-called *Jiffy June* test for willfulness, which was originally set forth by the former Fifth Circuit Court of Appeals in *Coleman v. Jiffy June Farms*, 458 F.2d 1139, 1142 (5th Cir.1971), and then reaffirmed by the Eleventh Circuit in *Brock v.*

---

**3.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Georgia Southwestern College,* 765 F.2d 1026 (11th Cir.1985). Under that test, a violation is "willful" whenever the employer knew that, under the circumstances, the Equal Pay Act was "in the picture" but did not take investigative or remedial measures. *Jiffy June,* 458 F.2d at 1142; *Brock,* 765 F.2d at 1038.

■ In 1988, however, the *Jiffy June* standard was rejected by the United States Supreme Court as a measure of willfulness under the Equal Pay Act. In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Court held that, because employers know that the Equal Pay Act is "in the picture" in virtually every case of sex-based wage disparities, the *Jiffy June* test rendered the difference between willful and non-willful violations meaningless. As a result, the *McLaughlin* Court held that an employer commits a willful violation only where it "knew or showed reckless disregard for the matter of whether its conduct was prohibited. . . ." 486 U.S. at 130, 108 S.Ct. at 1680. This court will therefore use the "reckless disregard" standard in evaluating whether the Commission willfully violated the Equal Pay Act with regard to Ramsey's pay.

■ The court believes, and so finds, that, because the disparity between Powell's and Ramsey's pay was so substantial and because the award of the higher salary came so close on the heels of the lower salary, the Commission must have acted consciously and with full knowledge of the disparity and the unjustified inequity. The Commission's conduct was even more egregious after the court ordered the Commission to reinstate Ramsey. The court therefore concludes that the Commission acted willfully, that is, in reckless disregard of the Equal Pay Act, from the point in time that it hired Powell forward. The court, however, cannot say that Commission acted willfully before then.

■ Therefore, although the Commission did act willfully, all of its willful behavior (beginning May 9, 1995) occurred within two years of when Ramsey filed this lawsuit (February 20, 1996). The court is thus presented with the question of whether willful conduct that is within the two-year limitations period resurrects non-willful conduct that is prior to the two-year limitations period but within the three-year limitations period. The provision covering willful violations states that, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." The provision thus extends the limitations period back an extra year only when the willful violations began during that year, and does not affect the limitations period for non-willful violations; or, to put it another way, the provision does not resurrect time-barred non-willful violations. Ramsey's recovery is therefore limited to two years.

## B. *Liquidated Damages*

In addition to the base back-pay award, the court must under 29 U.S.C.A. § 216(b) order the defendant to pay a liquidated damages award of an amount equal to the backpay award, unless "the court chooses not to make an award where the employer shows its actions were in good faith and shows it had a reasonable grounds for believing that those actions did not violate the Equal Pay Act." *Glenn v. General Motors Corp.,* 841 F.2d 1567, 1573 (11th Cir.1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). The Commission carries the burden of proving that it acted in good faith and that liquidated damages are therefore inappropriate; if it does not meet this burden, liquidated damages are mandatory.

As stated, after the Commission hired Ramsey's successor at a significantly higher wage than at what it had hired Ramsey, and even more so after it reinstated Ramsey at her original lower wage, the Commission acted consciously and with full knowledge of the disparity and the unjustified inequity. Moreover, the Commission has offered no evidence to suggest that it even investigated its obligations under the

Equal Pay Act, which action is a necessary predicate to a finding of good faith. *See Reeves v. International Telephone and Telegraph Corp.,* 616 F.2d 1342, 1353 (5th Cir.1980) ("Good faith requires some duty to investigate potential liability...."), *cert. denied* 449 U.S. 1077, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981); *see also EEOC v. White and Son Enterprises,* 881 F.2d 1006 (11th Cir.1989). Instead, the Commission attempts to support its contention of good faith by arguing that it did not in fact violate the Equal Pay Act when it paid Ramsey's successor substantially more than it paid her. But this argument has already been soundly rejected in this case by the Eleventh Circuit.

 Because the Commission has provided no relevant evidence to suggest that it acted in good faith, the court will award Ramsey liquidated damages.

### C. *Damages Calculations*

In accordance with the above findings, the Commission is liable to Ramsey for back pay for the period beginning February 20, 1994 (which is two years before Ramsey filed this lawsuit), until the back-pay payment is made, with plaintiff Ramsey to be paid at the higher salary from then on. The amount of back pay due to Ramsey should be calculated by subtracting the amount of money Ramsey actually earned during the given period from the amount she would have earned had her starting salary been the same as that of her successor. Ramsey is due an award thus calculated not only for the period of her employment with the Commission, but also for the period during which she was not employed by the Commission, since her unemployment was caused by the Commission's discriminatory termination of Ramsey.

Furthermore, according to 29 U.S.C.A. § 216(b), liquidated damages should be in "an additional equal amount" to that of back pay. In other words, the amount of liquidated damages should equal the amount of back pay.

Counsel for parties should calculate these two amounts, and submit the agreed-upon figures to the court within 14 days.

Accordingly, for the above reasons, it is ORDERED as follows:

(1) Defendant Alabama Public Service Commission is liable to plaintiff Judy Ramsey for back pay for the period beginning on February 20, 1994, until the back pay payment is made, with plaintiff Ramsey to be paid at the higher salary from then on.

(2) Defendant Alabama Public Service Commission is liable to plaintiff Ramsey for liquidated damages in the same amount as it is liable to her for back pay.

(3) Counsel for parties are to calculate the amounts of back pay and liquidated damages in accordance with this order, and submit the agreed-upon figures to the court within 14 days from the date of this order, for entry of a final judgment in these amounts.

The clerk of the court is DIRECTED to provide a copy of the this order to counsel for all parties by facsimile transmittal.