**James P. PIERSON, Plaintiff,**

v.

**NEWS GROUP PUBLICATIONS, INC., Defendant.**

**Civ. A. No. CV181–173.**

United States District Court, S.D. Georgia, Augusta Division.

Sept. 24, 1982.

Percy J. Blount, Blount & Curry, Augusta, Ga., for plaintiff.

R. Carl Cannon, Daryll Love, Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., Squadron, Ellenoff, Plesent & Lehrer, Neal M. Goldman, Slade R. Metcalf, New York City, for defendant.

## ORDER

BOWEN, District Judge.

This diversity action involves issues of alleged invasion of privacy and intentional infliction of emotional distress arising from the publication of two articles in *The Star,* a tabloid published by defendant News Group Publications, Inc. The case is now before the Court on defendant's motion for summary judgment. From the record the following undisputed facts appear:

A reporter, Michael Munro, and a freelance photographer, Harry Siskind, were sent to Fort Gordon, Georgia by *The Star* to cover a prisoner of war training program (the program or POW training) conducted by the United States Army. The program subjected army trainees to simulated POW treatment that could be expected by a captive during war. Munro and Siskind received permission from the Fort Gordon Public Affairs Office to cover a training session. They were introduced to a platoon, led by plaintiff Lt. James Pierson, about to undergo training. The platoon and the plaintiff were told that Munro and Siskind would be present during the training gathering information for a news article. [It is disputed whether the platoon was told that Munro and Siskind were from *The Star* or from another organization.]

During the course of the session, Pierson was strung up between two trees, handcuffed to a tree, locked in a sand box, and hosed down with water in 40 degree weather clad only in his underwear. He was also

pulled behind a pickup truck. Eventually he was taken to the military hospital suffering from hypothermia.

The first article, published December 9, 1980, described the training and focused on Pierson and several other trainees. A second, follow-up article appeared several months later and reported the reaction to the army's training program. In describing the plaintiff's training, the first article, in pertinent part, reads:

A savage military exercise, in which American GIs pretended to be prisoners of war, was called off after the brutal and terrifying tactics of their Army mates left one lieutenant near death and 19 other soldiers in the hospital.

\* \* \* \* \* \*

The worst torture was reserved for those GIs who refused to give their mock-Soviet antagonists more than the customary name, rank and serial number.

Lt. James Pierson, 32, leader of the group, was strung up, locked in the sandbox, hosed down and dragged behind a pickup truck before pretending to break down and give the 'enemy' everything they wanted.

When the MPs and interrogators learned he was lying, he was stripped, hosed down again for three hours, and dragged for three miles behind the truck before throwing a fit.

Lt. Pierson was rushed to the hospital where doctors were shocked by his subnormal body temperature and contacted the base. Medical authorities warned that Pierson could die if his condition worsened, and an emergency alert finally canceled the POW exercise. But by then, the grueling course had already taken a severe toll.

Photographs depicting plaintiff, in only underwear, except for one, strung up between two trees, handcuffed to another tree, being hosed down and being carried to an ambulance accompanied the article. Photographs of the plaintiff were not the only ones published, nor was he the only trainee whose experiences were detailed by the story.

Although the basic treatment as described in the article is not disputed, certain attendant details are controverted. For example, Pierson alleges he was never dragged behind a pickup truck, but was only pulled once. Also, he was never hosed down for three hours. It is alleged that it was probably no more than fifteen minutes. Contrary to the article, plaintiff asserts his disbelief that he was near death at any time, and, furthermore, he was never told by medical personnel that he would die if his condition worsened. Moreover, shortly after being taken to the hospital and treated he was released.

Plaintiff alleges the articles contained lies, half-truths, and inaccuracies and generally misrepresented, sensationalized and fictionalized the training program. He contends he never authorized *The Star* the use of his name or likeness and because of the defendant's use he has suffered embarrassment, humiliation, extreme emotional distress, ridicule and public scorn. Furthermore, because the first article misrepresented and falsely depicted the training, it cast him in a false light that made him appear weak and submissive.

The defendant filed a motion for summary judgment which the plaintiff opposes. As is well known, on a motion for summary judgment, the non-moving party enjoys the benefit of the doubt and is not required to produce any evidence until, and unless, the moving party shows the absence of any genuine issue of material fact. Then, the burden shifts to the opposing party to demonstrate the existence of a genuine issue of material fact. In reviewing the record, the evidence is viewed in a light favorable to the opposing party and all reasonable inferences inure to his benefit.

I

Addressing first plaintiff's alleged invasion of privacy claim, it is noted that under Georgia caselaw the concept of invasion of privacy encompasses four loosely related but distinct torts, as follows:

a) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs;

b) public disclosure of embarrassing private facts about the plaintiff;

c) publicity which places the plaintiff in a false light in the public eye; and,

d) appropriation for the defendant's advantage, and of the plaintiff's name and likeness.

*Cabaniss v. Hipsley,* 114 Ga.App. 367, 370, 151 S.E.2d 496 (1966). Although plaintiff does not specifically allege each tort, he does allege generally an invasion of privacy. Moreover, plaintiff's intention to allege all four can be inferred from the fact that both parties deal with all four in their summary judgment briefs. Accordingly, the complaint will be construed as alleging all four torts.

■ Before applying a summary judgment analysis to each privacy tort, a broader issue must be resolved. Defendant asserts there is no invasion of privacy present in this case because the articles dealt with a matter of public interest which is not limited by the right to privacy. *Waters v. Fleetwood,* 212 Ga. 161, 91 S.E.2d 344 (1967). This is essentially the same privilege mandated by the first amendment to the United States Constitution. *Campbell v. Seabury Press,* 614 F.2d 395, 397 (5th Cir. 1980). It is recognized that the publication and dissemination of matters of public interest and concern is necessary to the maintenance of an informed public. *See Cox Broadcasting Corp. v. Cohen,* 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). As reflected by *Cox,* the truthful publication of matter pertaining to legitimate public interest can never expose the publishers to liability. Even publications of erroneous statements of facts, although not worthy of protection, come within the first amendment privilege acknowledging the inevitability of mistake in open debate and discussion and the distasteful consequences of self-censorship. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The Supreme Court, in its gingerly handling of first amendment cases, has "been especially anxious to assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise" in accommodating the competing interests of free expression and recovery for wrongful injury. 418 U.S. at 342, 94 S.Ct. at 3008.

A publication, however legitimate the subject matter may be to the public interest, can overstep the "breathing space" and beyond any first amendment privilege. *Garrison v. Louisiana,* 379 U.S. 64, 75, 85 S.Ct. 209, 216, 13 L.Ed.2d 125 (1964). In *Time, Inc. v. Hill,* 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967), a false-light invasion of privacy action, the Supreme Court was faced with the issue of when may a state provide for the redress for the false reporting of matters of public interest in a right to privacy context. Although *Time, Inc.* was not a defamation action, the Court looked to its decisions in that area for guidance. The Court held that recovery under the New York statute in issue was constitutionally permissible if it was established that defendant published the report "with knowledge of its falsity or in reckless disregard of the truth." *Id.* at 388, 87 S.Ct. at 542.

■ With respect to the Georgia law of privacy, which is woefully undeveloped, it follows that the four privacy tort actions are precluded if the publication is of a newsworthy event that is not within the *Time, Inc.* proscription. Of course, the determination of whether the publication has met the *Time, Inc.* standard is one for the jury. *Time, Inc.,* at 394, fn. 11, 87 S.Ct. at 545 fn. 11. Even the common law privilege stated in *Waters, supra,* if distinguishable from the first amendment privilege, is subject to limitation. The seminal Georgia privacy case of *Pavesich v. New England Life Insurance Co.,* 122 Ga. 190, 50 S.E. 68 (1905), recognized that the freedoms of press and speech could not be exercised abusively. The *Pavesich* court viewed the right of privacy and of press and speech as checks upon each other. *Id.* at 205, 50 S.E. 68. As Justice Cobb cogently stated in *Pavesich :*

The truth may be spoken, written, or printed about all matters of a public na-

ture, as well as matters of a private nature in which the public has a legitimate interest ... But there may arise cases where the speaking or printing of the truth might be considered an abuse of the liberty of speech and of the press ... *Id.* at 204, 50 S.E. 68. The privilege of printing matters of public interest extends only to truthful publications. Logically, then, false reports are not protected. But there is a gray area between the two extremes. Falsity is not a constant, static concept, but exists in various degrees. Georgia law does not clearly define the degree or type of falsity that will exclude a publication from the common law privilege. It seems, however, that the standard applicable to this common-law privilege is that announced in *Time, Inc., supra,* knowing or reckless falsehood. *See, Cox Broadcasting Corp., supra* at 490, 95 S.Ct. at 1043. The point at which a knowing falsehood abrogates the privilege is when the falsehood is material or, in other words, highly offensive to a reasonable person. *Campbell v. Seabury Press, supra,* at 397. Thus, in the case at bar, a jury question is present regarding the applicability of the first amendment, or, if considered distinct, the *Pavesich* privilege to the defendant's articles forming the basis of this action.

## II

Defendant contends summary judgment on each of the four privacy torts is proper regardless of whether or not the impugned articles are privileged. As examination of the elements of each of the privacy torts is in order.

## INTRUSION INTO PLAINTIFF'S SOLITUDE OR PRIVATE AFFAIRS

Plaintiff invokes this cause of action on the grounds the training in question took place in a restricted area of the Fort Gordon military reservation. Furthermore, the articles focused on the plaintiff's personal experiences during the course of the training. Plaintiff contends that he had every expectation that his private affairs and activities connected with the program would remain private. Under the undisputed evidence in the record, summary judgment on this cause of action is appropriate.

An essential element of this tort is a physical intrusion analogous to a trespass. *Cabaniss v. Hipsley, supra,* at 371, 151 S.E.2d 496 (and the cases cited therein); *Peacock v. Retail Credit Company,* 302 F.Supp. 418, 422 (N.D.Ga.1969). Plaintiff has not alleged any sort of physical intrusion and cannot do so for several reasons. The training took place on a military reservation which is controlled by the plaintiff's superiors. The location of the training, though restricted to the public generally, was not a place where the plaintiff could reasonably expect privacy as he could in his sleeping quarters or other peculiarly personal area. The restrictions placed upon the training area was for the benefit of the army and not Lt. Pierson. The army waived this benefit by permitting the reporter and photographer to view the training, which was its right, but not Pierson's. Also, the plaintiff could not evict Munro and Siskind from the training area if he felt they were intruding into private matters. Thus, it cannot be said that the plaintiff had any reasonable expectation of privacy. Any intrusion that took place was not one analogous to a trespass. Even if there was such an intrusion the injury fell upon the United States Army. Finally, the plaintiff's complaint really stems from the publication of the articles and not from the presence of Munro and Siskind.

Accordingly, in as much as plaintiff has not demonstrated any physical intrusion, an essential element of this tort is lacking. Summary judgment on this cause of action is, therefore, granted in favor of the defendant.

## PUBLIC DISCLOSURE OF EMBARRASSING PRIVATE FACTS ABOUT THE PLAINTIFF

Plaintiff alleges the defendant publicly disclosed private facts concerning the plaintiff's experiences with the program. It is contended the first article made Pierson look weak as an officer.

To recover under this tort theory three elements must be established:

a) the disclosure of private facts must be a public disclosure;

b) the facts disclosed to the public must be private, secluded or secret facts and not public ones; and,

c) the matter made public must be offensive and objectionable to a reasonable man of ordinary sensibilities under the circumstances.

*Cabaniss, supra,* at 372. Defendant argues that the last two elements are not present in this case. Although a public disclosure was made, the facts disclosed cannot be said, as a matter of law, to be private, secluded or secret facts. Thus, as shown by the record, a necessary element is missing thereby mandating a grant of summary judgment as to this cause of action.

The initial premise leading to the above conclusion is that the POW training was a matter of public interest and concern. The army freely permitted news coverage of an earlier session which was broadcast by an Atlanta television station. *The Star's* reporter and photographer were granted permission to view the training and gather material for an article. Thus, the army obviously thought the training to be of public interest. Also important to note is the belief of the plaintiff that the training is within the legitimate concern of the public as long as it was portrayed in a factual manner. Deposition of Plaintiff, January 29, 1982, pg. 58.

Although it is clear the POW training is a matter of public interest, does it necessarily follow that the plaintiff's experiences are of public interest? In adopting a standard for newsworthiness, the Ninth Circuit Court of Appeals, in *Virgil v. Time, Inc.,* 527 F.2d 1122 (9th Cir. 1975), recognized that in determining what is a matter of public interest

[t]he line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake, with which a reasonable member of the public,

with decent standards, would say that he had no concern.

*Id.* at 1129. The first article published in *The Star* as it concerned Lt. Pierson, related solely to his treatment by military personnel during the program. It did not delve into any other aspect of his life or any personal affairs outside of the training. Though the use of the personal experience convention as a vehicle to describe the treatment might be questioned in this case, it does not detract from the newsworthiness of the training or of the surrounding personal incidents. To attack the manner in which a newsworthy item is reported, apart from truthfulness challenges, seems to encroach upon the "breathing space" accorded by the Supreme Court to the freedom of the press. *See, Gertz, supra* at 342, 94 S.Ct. at 3008; *Cox Broadcasting Corp., supra,* at 496, 95 S.Ct. at 1046.

Plaintiff's view that his experiences during the training are private does not make them private. It is not necessary for one to voluntarily disclose or allow disclosure of these before they are considered news items. In *Waters, supra,* the Georgia Supreme Court pointed out that

[t]here are times, however, when one, whether willingly or not, becomes an actor in an occurrence of public or general interest. When this takes place, he emerges from his seclusion, and it is not an invasion of his right of privacy to publish his photograph with an account of such an occurrence.

*Id.* at 164, 91 S.E.2d 344. The plaintiff, in the case at bar, was involved in a matter of public interest. He was aware of the presence of a reporter and photographer at the training session. However unwilling he may have been to submit to public scrutiny, he cannot realistically claim his activities were private when those activities were inextricably interwoven with a public matter. Consequently, there has not been any disclosure of private facts, an essential element to the viability of this particular tort.

Accordingly, defendant is granted summary judgment on this claim.

## PUBLICITY WHICH PLACES ONE IN A FALSE LIGHT IN THE PUBLIC EYE

To maintain this tort, a public disclosure of private facts need not be shown. What must be shown, however, is falsity or fiction in that the publication depicts plaintiff as something he is not. The interest protected is that of reputation. *Cabaniss, supra,* at 375, 151 S.E.2d 496.

In this case, Lt. Pierson asserts that the first article makes him appear weak as an officer and that he broke down easily under investigation, telling his interrogators everything they wished to know. On the other hand, defendant contends the article depicts plaintiff as "superhuman" because of his ability to withstand the rigors of the training. In its brief, defendant asserts "the articles speak for themselves." Reference to the articles reveals the existence of a question of material fact in this case as to this cause of action. The interpretation of the articles and the impressions garnered therefrom are matters for a jury. The articles do not clearly favor one construction or another, thereby leaving the determination of what light it places the plaintiff to the jury. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.,* 669 F.2d 1026, 1031 (5th Cir. 1982).

Summary judgment is denied with respect to this cause of action.

## APPROPRIATION, FOR THE DEFENDANT'S ADVANTAGE, OF THE PLAINTIFF'S NAME OR LIKENESS

The gist of this tort is an unauthorized appropriation of a person's name or likeness for commercial exploitation. The right implicated in this tort is a property right and the injury is pecuniary. *Martin Luther King, Jr., Etc. v. American Heritage Products, Inc.,* 508 F.Supp. 854, 862 (N.D.Ga.1981). The right has been viewed not as one of privacy, but as one of publicity. *Id.* Under this theory, recovery is gauged solely by the unjust enrichment of the defendant as measured by the value of the use of the appropriated publicity. *Cabaniss, supra,* at 378, 381, 151 S.E.2d 496.

In the case at bar, plaintiff contends that since he did not authorize the use of his name or photograph an appropriation has occurred to the defendant's advantage.

Under the undisputed facts, plaintiff has failed to show what value is attributable to his name and likeness. Moreover, there is no evidence demonstrating the advantage gained by the defendant through the use of plaintiff's name and likeness. Plaintiff, in his deposition at pg. 69, states he was forbidden by army regulations from accepting money for the use of his picture or name. Consequently, there does not seem to be any pecuniary injury.

Plaintiff knew that photographs were being taken by someone who had the permission of the army to gather information for a news article. Plaintiff did not attempt to stop the photographer because he felt he did not have a choice in the matter. Deposition of plaintiff, pg. 46. In fact, plaintiff was instructed to cooperate with the newsmen. *Id.* at 37. As a serviceman, plaintiff was obliged to obey his superiors. *Department of the Air Force v. Rose,* 425 U.S. 352, 368, 96 S.Ct. 1592, 1602, 48 L.Ed.2d 11 (1976); *Hough v. Seaman,* 493 F.2d 298 (4th Cir. 1974). Consequently, plaintiff, though unwilling, was placed into a situation in which his photograph and name were legitimately taken for use in *The Star.*

Accordingly, because plaintiff himself could not exploit commercially his name and photograph, thereby precluding pecuniary injury, and he was required by his superiors to allow his photograph and name to be used, summary judgment in favor of the defendant is granted as to this cause of action.

## III

## INFLICTION OF EMOTIONAL DISTRESS

Plaintiff maintains he suffered embarrassment, humiliation, and extreme emotional distress as a result of the defendant's publication of the articles and photographs. By publishing the photographs, plaintiff

alleges, defendant acted in bad faith with malice and with an intentional disregard of the plaintiff's feelings.

Georgia recognizes the tort of intentional infliction of emotional distress. *Georgia Power Co. v. Johnson,* 155 Ga.App. 862, 274 S.E.2d 17 (1980). To recover for emotional distress, it must be demonstrated that the defendant committed a "wanton, voluntary or intentional wrong the natural result of which is the causation of mental suffering ..." *Whitmire v. Woodbury,* 154 Ga.App. 159, 267 S.E.2d 783 (1980) rev'd on other grounds, 246 Ga. 349, 271 S.E.2d 491 (1980); *Stephens v. Waits,* 53 Ga.App. 44, 184 S.E. 781 (1935). Thus, actual intent on the part of the defendant to produce such distress is not essential to recovery. A reckless and willful disregard of the consequences of one's actions, coupled with knowledge of the probable results also forms a basis for recovery. *Delta Finance Co. v. Ganakas,* 93 Ga.App. 297, 91 S.E.2d 383 (1956). The acts of the defendant must be "so terrifying or insulting as naturally to humiliate, [or] embarrass ... the plaintiff." *Georgia Power Co., supra,* at 863, 274 S.E.2d 17. The behavior must amount to "egregious, physically intimidating conduct ..." *Young v. Colonial Oil Company,* 451 Supp. 360, 361 (M.D.Ga.1978).

Although the question is close, there are questions of fact regarding the natural consequences of the manner the training was reported and depicted and its effect on the plaintiff. In other words, was the defendant's conduct, in publishing the articles and photographs, so egregious and insulting as to naturally cause the plaintiff embarrassment, humiliation and mental suffering. Further, there is an issue as to whether defendant intended the results, or if it recklessly and willfully disregarded the consequences of its actions.

As to the mental distress claim, summary judgment is denied.