Shirley THOMPSON, Plaintiff,

v.

JOHN L. WILLIAMS COMPANY, INC.,
et al., Defendants.

Civ. A. No. 86–96–VAL (WDO).

United States District Court,
M.D. Georgia,
Valdosta Division.

May 9, 1988.

Craig Alan Webster, Tifton, Ga., for plaintiff.

Howard E. McClain, Adel, Ga., for defendants.

## ORDER

OWENS, Chief Judge.

Plaintiff Shirley Thompson brought this action against the defendants, John L. Williams d/b/a Williams Properties and Mike Williams, alleging that they have violated her rights under Title VII of the Civil Rights Act of 1964. Plaintiff further alleges that defendants have violated the Equal Pay Act, 29 U.S.C. § 206. Finally, plaintiff makes a pendent state law claim for damages resulting from the intentional infliction of emotional distress. The parties requested a non-jury trial, and this court conducted such a trial on March 3, 1988, in the United States District Court for the Middle District of Georgia, Valdosta Division. Having considered the evidence presented at trial and the arguments of the parties, this court now enters this memorandum opinion pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

1. Mike Williams is the sole owner of and does business as Williams Foods. Mike Williams d/b/a Williams Food is, and was at the time relevant to this lawsuit, the operator of a twenty-four-hour-a-day restaurant known as Adel Truck Plaza. Mike Williams leases the building within which the restaurant is housed from his father, John L. Williams, who does business as John L. Williams Properties. See Deposition of Mike Williams ("Williams Deposition"), pp. 2–4; see also Attached Exhibit to Defendant's Response to Plaintiff's Request for Production of Documents ("Lease").

In the years 1984 and 1985, John L. Williams was the owner of at least two organizations, John L. Williams Company and John L. Williams Properties. See Deposition of John L. Williams ("John Williams Deposition"), pp. 6–7. In the year 1985, when Mike Williams leased the Adel Truck Plaza from John L. Williams Properties, the building and the employees therein were insured through a policy issued to John L. Williams Properties. Id. at p. 14. As late as August of 1985, in an action before the State of Georgia Board of Worker's Compensation involving plaintiff's counsel and a claimant other than Mrs. Thompson, it was "stipulated and agreed that on or about August 12, 1985, Employee/Claimant was employed by Employer John L. Williams Properties, Inc., d/b/a Adel Truck Plaza...." See Letter dated February 16, 1987, from Craig A. Webster, with attached Exhibit. The lease agreement between Mike Williams and John L. Williams Properties clearly evidences an arrangement tying the operation of the restaurant to other properties and businesses owned by the lessor. See Lease. Both Mike Williams and John L. Williams refused in their depositions to explain fully the nature of the relationship between the various properties and enterprises. See generally, Williams Deposition and John Williams Deposition.

Because of the defendants' interrelated businesses, plaintiff erroneously brought her initial action against John L. Williams Company. As the adversarial process progressed, plaintiff twice amended her complaint to name as defendants John L. Williams Properties and Mike Williams. See Plaintiff's Complaint; Plaintiff's Addition of Additional Party, Docket No. 5; Plaintiff's Amended Complaint, Docket No. 13. This court finds that defendant Mike

Williams, as owner of Williams Foods and as operator of Adel Truck Plaza, was plaintiff's employer and is the proper party in this action.

2. Prior to Mike Williams, Lamar Baldree was one of the lessees of Adel Truck Plaza. John Williams Deposition, p. 10. During that time Mr. Baldree had alcohol abuse problems. The alcohol related problems, as well as other unidentified problems, led to a collapse of the restaurant business. Eventually, the Internal Revenue Service levied on the Adel Truck Plaza. *See* Williams Deposition, pp. 47–50.

3. When Mike Williams assumed control of Adel Truck Plaza in August of 1984, plaintiff Shirley Thompson, a white female, was employed in the restaurant as a waitress. *Id.* at p. 4.

4. On or about February 14, 1985, Mike Williams promoted plaintiff to co-manager of the restaurant. *Id.* at pp. 76–77;[1] Deposition of Shirley Thompson ("Thompson Deposition"), p. 5. Plaintiff earned one hundred eighty-five dollars ("$185.00") per week for the first two bi-monthly pay periods in her new position as manager. Beginning with the pay period ending on March 25, 1985, and continuing until the pay period ending June 5, 1985, plaintiff Shirley Thompson earned two hundred dollars ("$200.00") per week. Beginning with the pay period ending on June 19, 1985, and continuing until plaintiff earned her last check from Williams Foods on October 23, 1985, plaintiff earned two hundred twenty-five dollars ("$225.00") per week. *See* Plaintiff's Exhibit 4 (paycheck stubs for Williams Foods).

5. Plaintiff's duties included scheduling work shifts for the employees, operating the restaurant, purchasing food for the restaurant and computing the payroll. Thompson Deposition, pp. 5–9. Plaintiff worked long hours at the restaurant; she was on call and solely responsible for the operation of the restaurant twenty-four hours a day until Lamar Baldree was hired as co-manager on or about August 16, 1985. *See* Trial Transcript, pp. ——.

6. Mike Williams hired Lamar Baldree as co-manager with plaintiff in August of 1985. He paid Mr. Baldree three hundred dollars ("$300.00") per week. Though Mike Williams indicated that Mr. Baldree's higher salary was justified in light of certain responsibilities that he purportedly assumed in regards to both a truck wash on the Adel Truck Plaza premises and a tape business owned by Mike Williams, this court specifically finds both that Mr. Baldree had little, if anything, to do with these other operations and that plaintiff and Mr. Baldree had essentially the same duties as co-managers of the restaurant. This finding is supported by testimony at trial clearly indicating that plaintiff and Mr. Baldree alternated shifts on the premises and that while on duty each co-manager had substantially equivalent duties and responsibilities. *See* Trial Transcript, pp. ——; *see also* Williams Deposition, pp. 7–11.

7. Lamar Baldree gradually assumed a "superior" status in the managerial relationship. He prepared the schedule which dictated the shifts and hours that plaintiff was required to work. Baldree also assumed control of the purchasing of food for the restaurant. *See* Thompson Deposition, pp. 17–22.

8. Plaintiff Shirley Thompson is married and she has two children, twins who were approximately ten (10) years of age at the time relevant to this lawsuit. Her responsibilities at the restaurant resulted in certain conflicts with her responsibilities at home. Plaintiff desired to spend some time at home with her children, but her obligations at the restaurant made this desire an increasingly difficult task. *Id.* at pp. 17–18; *see* Williams Deposition, pp. 23–26; Trial Transcript, pp. ——–——.

9. Plaintiff discussed the conflict between job and family with Mike Williams, who insisted that as co-manager plaintiff must work the hours as scheduled. How-

---

1. Mike Williams described the two individuals sharing certain duties with Mrs. Thompson as head of shifts rather than as co-managers. *See* Williams Deposition, p. 6. By late April or early May of 1985, the two co-managers no longer worked for the restaurant. *See* Thompson Deposition, p. 6.

ever, Mike Williams gave her the option of returning to her past job as a waitress. As a waitress, plaintiff could work the morning shift, which runs from approximately 7:00 a.m. to 3:00 p.m. This return to waitress status would have been accompanied by a reduction in pay. *See* Williams Deposition, pp. 22–26; Trial Transcript, pp. —— ––—.

10. Plaintiff elected to quit her job in October of 1985, primarily to attend to the demands of her family. Plaintiff was not discharged, either expressly or constructively. *See* Thompson Deposition, p. 26; Trial Transcript, pp. ——.

11. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she had been a victim of sex discrimination. Having decided that there was no reasonable cause to believe plaintiff's charge, the EEOC issued to plaintiff on August 28, 1986, a notice of her right to sue. Plaintiff received this notice on September 10, 1986. Plaintiff filed the instant complaint on December 9, 1986, within the prescribed ninety ("90") days allowed for such a suit. *See* Plaintiff's Amended Complaint, Docket No. 13; *see also* Plaintiff's Original Complaint.

### Conclusions of Law

1. This court has jurisdiction over plaintiff's claims of sex discrimination pursuant to Section 703(h) of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e–2(h), and the Equal Pay Act, 29 U.S.C. § 206(d)(1). This court has jurisdiction over plaintiff's claim of intentional infliction of emotional distress pursuant to the doctrine of pendent jurisdiction. *See generally* Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3567.1.

2. Plaintiff has satisfied the jurisdictional prerequisites to judicial action under Title VII by filing a timely charge of employment discrimination with the EEOC and by receiving and acting upon the EEOC's notice of right to sue. *See* 42 U.S.C. §§ 2000e–5(e) and 2000e–5(f)(1).

3. In her initial complaint, plaintiff named as defendant the John L. Williams Company, Inc. Subsequent to the prescribed ninety (90) day limitations period, plaintiff twice amended her complaint to name as defendants John L. Williams d/b/a Williams Properties and Mike Williams. Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings. Rule 15(c) states as follows:

> **(c) Relation Back of Amendments.** Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c). As explained by the United States Supreme Court, relation back depends upon four factors, all of which must be satisfied. These factors are as follows:

> (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must [know] or should have known that, but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18, 27 (1986).

As established in the pleadings and in testimony at trial, the defendants in this case, whatever their corporate or individual names, have a commonality of interest in

the Adel Truck Plaza restaurant. Though plaintiff may have referred to the defendants incorrectly, the court finds that without question the proper defendant, Mike Williams, had sufficient notice of this lawsuit within the limitations period and that he would have been named correctly at the outset but for a mistake concerning the precise nature of the business organizations concerned. The court also concludes that defendant's defense to this action was in no way prejudiced by the initial misappellation.

4. Plaintiff's Title VII claim of sex discrimination focuses upon her allegation that she was constructively discharged.

> The general rule is that if the employer deliberately makes an employee's working condition so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge and is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.

*Buckley v. Hospital Corp. of America, Inc.,* 758 F.2d 1525, 1530 (11th Cir.1985), quoting *Young v. Southwestern Savings & Loan Association,* 509 F.2d 140, 144 (5th Cir.1975); *see Wardwell v. School Bd. of Palm Beach County, Fla.,* 786 F.2d 1554, 1557 (11th Cir.1986). To constitute a constructive discharge, the trier of fact need not find that an employer imposed the intolerable working conditions with the purpose of forcing an employee's resignation. Rather, "to find a constructive discharge, ... 'the trier of fact must be satisfied that the ... working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 65 (5th Cir.1980),[2] quoting *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir.1977); *see Wardwell,* 786 F.2d at 1557.

Plaintiff identifies several conditions purportly supporting her allegation of a constructive discharge. First, plaintiff points to the assumption by co-manager Lamar Baldree of certain duties and responsibilities. Second, and related to the first point, plaintiff contends that the schedule as prepared by Mr. Baldree resulted in plaintiff spending an inordinate amount of time away from her family at particular times, *i.e.,* when her children were returning home from school. The third condition identified by plaintiff is related to her second contention. In discussions with Mike Williams regarding her need to spend more time at home, defendant offered plaintiff the opportunity to return to her job as a waitress. Plaintiff seems to view this offer as degrading or humiliating. Finally, plaintiff points to the disparity between her salary and that of Mr. Baldree as a condition precipating her resignation.

After carefully considering these conditions both individually and collectively, this court determines that no constructive discharge has occurred. While evidence of unequal pay is relevant to the issue of whether a constructive discharge has occurred, "discrimination manifesting itself in the form of unequal pay cannot, alone, be sufficient to support a finding of constructive discharge." *Bourque,* 617 F.2d at 65–66. The additional conditions relied upon by plaintiff do not indicate to this court a situation so intolerable that a reasonable person would be compelled to resign. Plaintiff's dissatisfaction seems more the result of the inherent conflict between job and family in a twenty-four-hour-a-day restaurant than as a result of some deliberate attempt to make plaintiff's job situation intolerable. While humiliation or loss of prestige resulting either from a reduction in supervisory duties or from a proposed demotion raises a factual question on the issue of constructive discharge, *see Buckley,* 758 F.2d at 1530–31, this court finds that in this case the situation was not so intolerable as to justify a finding that plaintiff had been constructively discharged. *See Buckley,* 758 F.2d at 1531

---

**2.** The Eleventh Circuit adopted as binding precedent the cases of the former Fifth Circuit decided prior to October 1, 1981. *See Bonner v.*

*City of Pritchard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

(Hill, J., dissenting); *Castle v. Sangamo Weston, Inc.*, 650 F.Supp. 252, 266 (M.D. Fla.1986). Accordingly, plaintiff does not prevail on her Title VII claim.

5. The operative provision of the Equal Pay Act prohibits an employer from differentiating for the purposes of salary on the basis of sex "for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to [one of four enumerated exceptions]." 29 U.S.C. § 206(d)(1). "To make out a *prima facie* case under the Equal Pay Act, a plaintiff must show 'that an employer pays different wages to employees of opposite sexes'" for equal work, as that term is defined in the Act. *Schwartz v. Florida Board of Regents*, 807 F.2d 901, 907 (11th Cir.1987), quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974). "The jobs held by employees of opposite sexes need not be identical, rather they must only be substantially equal." *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1032 (11th Cir.1985). The skills and qualifications of the individual employees, though relevant to defendants' rebuttal of the *prima facie* case, once made, is not relevant to plaintiff's establishment of her *prima facie* case. *Id.*

Upon an adequate showing by plaintiff, the burden shifts to the employer to establish that the difference in pay is justified by one of the four statutory exceptions. *Schwartz*, 807 F.2d at 907. These exceptions include the following: "'(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any factor other than sex.'" *Id.*, quoting *Brock*, 765 F.2d at 1032. *See* 29 U.S.C. § 206(d)(1).

■ Plaintiff has established a *prima facie* case by showing that her salary was lower than the salary paid to her male co-manager for performing essentially the same job. Defendant argues that plaintiff and her co-manager Lamar Baldree did not do the same work. However, the evidence established that the co-managers alternated shifts on duty and that while on duty plaintiff and Baldree had the same responsibilities and performed essentially the same duties. Defendant attempted to describe other duties which Mr. Baldree performed for the truck wash and for a "tape business." These vague and unsubstantiated references were not supported by any credible evidence, and this court gives such references no weight.

Defendant next attempted to bring the wage inequity within the fourth exception enumerated in Section 206(d)(1): "... except where such payment is made pursuant to ... (iv) a differential based on any other factor other than sex...." 29 U.S.C. § 206(d)(1). Defendant points to Baldree's experience in the restaurant business as the "other factor." This experience as a differentiating factor between the co-managers is minimized as a legitimate distinction by evidence which establishes that Baldree previously managed the Adel Truck Plaza Restaurant, a term of management which was marred by financial problems and which culminated in the imposition of a tax lien upon the premises. The court also notes that defendant is unable to identify areas in which this experience enabled Mr. Baldree to perform certain job tasks more competently or more efficiently than plaintiff. *See Brock*, 765 F.2d at 1036–37 (when relying on alleged superior qualities of individual to justify inequality in salary, defendant must identify the superior qualities and specifically show that those qualities justify the inequality in the particular situation). Finally, the court infers from the consistent raises given to plaintiff that defendant was satisfied with her performance as manager.

This court determines that plaintiff and co-manager Lamar Baldree held positions of equal responsibility and that they performed equal work. Defendant's failure to pay the co-managers equally for equal work is not justified by any of the enumerated exceptions. Thus, defendant in this case has violated the Equal Pay Act, and plaintiff is entitled to recover therefor.

6. An employer who has violated the Equal Pay Act is liable for both unpaid compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). An appropriate measure of the damages awardable for unpaid compensation is the difference between the salaries paid to the two individuals engaged in the same job—plaintiff and Lamar Baldree. This method bases plaintiff's relief upon a salary commensurate with her job responsibilities. *See Gosa v. Bryce Hospital*, 780 F.2d 917, 919 (11th Cir.1986); *Sinclair v. Automobile Club of Oklahoma, Inc.*, 733 F.2d 726, 729 (10th Cir.1984) (awarding as part of damages the basic salary differential). That Lamar Baldree was hired subsequent to the hiring of plaintiff does not make the use of his salary as comparison an inappropriate one. "It is well established in this Circuit that '[t]he employees whose pay is the subject of comparison may hold jobs in succession as well as simultaneously.'" *Gosa*, 780 F.2d at 919, quoting *Pearce v. Wichita County*, 590 F.2d 128, 133 (5th Cir.1979) (other citations omitted).

Lamar Baldree received three hundred dollars ($300.00) per week or six hundred dollars ($600.00) per pay period as co-manager of Adel Truck Plaza Restaurant. Plaintiff Shirley Thompson received one hundred eighty-five dollars ($185.00) per week or three hundred seventy dollars ($370.00) per bi-monthly pay period when she assumed the position of manager in February of 1985. Plaintiff's salary increased to two hundred dollars ($200.00) per week or four hundred dollars $400.00) per bi-monthly pay period in March, and the salary was increased to two hundred twenty-five dollars ($225.00) per week or four hundred fifty dollars ($450.00) per bi-monthly pay period in June of 1985. The table below identifies the discrepancy in pay per bi-monthly period.

| Pay Periods | Salary Discrepancy |
| --- | --- |
| 2–14/2–27 | $230.00 |
| 2–28/3–13 | $230.00 |
| 3–14/3–25 | $200.00 |
| 3–26/4–10 | $200.00 |
| 4–11/4–24 | $200.00 |
| 4–25/5–08 | $200.00 |
| 5–09/5–22 | $200.00 |
| 5–23/6–05 | $200.00 |
| 6–066–19 | $150.00 |
| 6–20/7–03 | $150.00 |
| 7–04/7–17 | $150.00 |
| 7–18/7–31 | $150.00 |
| 8–01/8–14 | $150.00 |
| 8–15/8–28 | $150.00 |
| 8–29/9–11 | $150.00 |
| 9–12/9–25 | $150.00 |
| 9–26/10–9 | $150.00 |
| 10–10/10–23 | $150.00 |
| TOTAL | $3160.00 |

Defendant Mike Williams is ORDERED to remit to plaintiff in unpaid compensation the amount of three thousand one hundred sixty dollars ($3,160.00).

7. As stated previously, 29 U.S.C. § 216(b) provides for the award of liquidated damages in an amount equal to the amount of unpaid compensation. However, the Portal to Portal Act permits an employer to avoid such liquidated damages providing he can show "to the satisfaction of the court that the act or omission giving rise to [an action under the Fair Labor Standards Act] was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation...." 29 U.S.C. § 260. Absent a showing of good faith, liquidated damages are mandatory. *See Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987). "The employer must plead and prove that the act or omission complained of was: (1) in good faith; (2) in conformity with; and (3) in reliance on an administrative regulation, order, ruling, approval or interpretation of an agency of the United States." *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985) (citations omitted).

> The "good faith" defense is not available to an employer unless the acts or omissions complained of "were in conformity with" the regulation.... This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary.

29 C.F.R. § 790.14; *see* Olson, 765 F.2d at 1579–80 (good faith defense available only when employer innocently and to his detri-

ment followed law as provided to him by government agency).

■ Defendant in this case cannot avail himself of the good faith defense. No evidence is before this court showing that defendant relied upon the pronouncement of any governmental agency. Thus, defendant Mike Williams must pay to plaintiff in liquidated damages an amount equal to the amount of unpaid compensation. Defendant is ORDERED to pay to plaintiff three thousand one hundred sixty dollars ($3,160.00) in liquidated damages.

■ 8. Plaintiff may not recover both liquidated damages and prejudgment interest under the Fair Labor Standards Act. *Joiner*, 814 F.2d at 1539. Therefore, no prejudgment interest is awarded.

9. In an action for unpaid compensation in violation of the Equal Pay Act, the court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The award of attorney's fees is mandatory. *See Shelton v. Ervin*, 830 F.2d 182 (11th Cir.1987); *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185 (5th Cir.1979). "The determination of a reasonable fee pursuant to section 216(b) of the Fair Labor Standards Act is left to the sound discretion of the trial judge...." *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir.1985). In determining costs and attorney's fees, this court must consider the twelve factors announced in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) (footnote omitted). *Id.*

Plaintiff's counsel has submitted to the court an itemized accounting of the time expended in preparing this case. *See* Letter from Craig A. Webster, dated March 31, 1988. In this letter, plaintiff's counsel documents fifty one and one-half (51.50) hours of pretrial preparation. Plaintiff's counsel suggests that sixty dollars ($60.00) per hour is a reasonable charge for his labor. Defendant's counsel has agreed as

to the reasonableness of the time expended and the hourly fee. Not included in the itemized hour but requested by plaintiff's counsel is an additional amount for the time spent in court on the day of the trial. Plaintiff's counsel suggests that an additional eight hours at sixty dollars ($60.00) per hours for both he and his co-counsel (total of sixteen hours) is reasonable in this case. Defendant has filed no objection to this request to supplement the itemized accounting.

Having considered the itemized records and the affidavit submitted by plaintiff's counsel in light of the factors outlined in *Johnson, supra,* this court determines that the hours and the charges identified by plaintiff's counsel are reasonable and appropriate. Adding sixteen (16) hours for the trial of this case, plaintiff's counsel should be compensated for sixty-seven and one-half (67.50) hours at the rate of sixty dollars ($60.00) per hour. Thus, defendant is ORDERED to pay reasonable attorney's fees in the amount of four thousand one hundred fifty dollars ($4,150.00).[3]

10. "Georgia recognizes the tort of intentional infliction of emotional distress." *Greer v. Medders,* 176 Ga.App. 408, 409, 336 S.E.2d 328, 329 (1985). In Georgia, this tort has been construed narrowly. *Stamps v. Ford Motor Co.,* 650 F.Supp. 390, 401 (N.D.Ga.1986). To prevail upon such a claim, "plaintiff must show that 'defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff.'" *Sossenko v. Michelin Tire Corp.,* 172 Ga.App. 771, 772, 324 S.E.2d 593, 594, quoting *Ga. Power Co. v. Johnson,* 155 Ga.App. 862, 863, 274 S.E. 2d 17, 18 (1980). Plaintiff need not establish that such results were actually intended. However, plaintiff must demonstrate "that the defendant committed a 'wanton, voluntary or intentional wrong the natural result of which is the causation of such suffering....'" *Pierson v. News Group Publications, Inc.,* 549 F.Supp. 635, 643, quoting *Whitmire v. Woodbury,* 154 Ga.

---

**3.** The court advises plaintiff's counsel to submit to the Clerk of the Court an accounting of his costs.

App. 159, 159, 267 S.E.2d 783, 784, *rev'd on other grounds,* 246 Ga. 349, 271 S.E.2d 491 (1980).

11. To prevail upon a claim of intentional infliction of emotional distress, plaintiff must establish the above elements by a preponderance of the evidence. O.C. G.A. § 24–4–3 (1982).

12. Plaintiff contends that defendant's conduct in this case resulted in a constructive discharge, the result of which effectively ended her "dream" to manage a restaurant. Plaintiff contends that defendant's conduct and his destruction of her dream constitute the intentional infliction of emotional distress. As discussed previously, this court has held that no constructive discharge occurred. Likewise, this court finds that defendant's actions in this case were not so terrifying or insulting as to cause plaintiff the humiliation, embarrassment or fright necessary to justify recovery for intentional infliction of emotional distress. Thus, plaintiff is not entitled to recover for this claim.

In conclusion, the court holds that plaintiff is not entitled to recover for either her Title VII claim or her claim for intentional infliction of emotional distress. However, plaintiff has prevailed on her claim pursuant to the Equal Pay Act. Defendant Mike Williams is ORDERED to pay plaintiff the amounts of three thousand one hundred sixty dollars ($3,160.00) for unpaid compensation and three thousand one hundred sixty dollars ($3,160.00) for liquidated damages. Defendant is ORDERED to pay reasonable attorney's fees in the amount of four thousand one hundred fifty dollars ($4,150.00) and, upon determination, the costs of this action.