**Joan E. PASSMORE, Plaintiff,**

v.

**KINDERCARE LEARNING CENTERS, INC., Defendants.**

No. CIV.A. 97–A–350–N.

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 29, 1997.

Joseph B. Lewis, Timothy A. Tyler, Montgomery, AL, for Plaintiff.

Alex L. Holtsford, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by defendant KinderCare Learning Centers, Inc., ("KinderCare") on July 15, 1997. Joan E. Passmore, the Plaintiff, filed this case on March 13, 1997. In her complaint, she alleges that the Defendant unlawfully discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Equal Pay Act, 29 U.S.C. § 206 et seq. ("EPA"). The Plaintiff sought compensatory and punitive damages, and an injunction, for a wrongfully denied promotion and disparity in wages.

Defendants have moved for summary judgment on the grounds that (1) Plaintiff cannot prove a prima facie case that the denial of the promotion was in violation of Title VII; or, in the alternative, even if Plaintiff has shown a prima facie case, Plaintiff has not shown evidence to rebut Defendant's proffered legitimate, non-discriminatory reasons; (2) Plaintiff cannot show a prima facie case of a violation of the EPA; or, in the alternative, even if Plaintiff has shown a prima facie case, Plaintiff has not shown evidence to rebut Defendant's proffered defenses; and (3) Plaintiff cannot show a prima facie case that any pay disparity was in violation of Title VII; and, even if Plaintiff can, she cannot rebut Defendant's proffered legitimate reasons.

For the reasons discussed herein, Defendant's Motion for Summary Judgment is due to be DENIED.

### II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,*

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. at 2552–2553.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial.").

What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248, 106 S.Ct. at 2510 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11th Cir. 1989).

The evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–2514. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

### III. *FACTS*

The evidence submitted to the court, viewed in the light most favorable to the non-movant, establishes the following facts.

Plaintiff Joan E. Passmore was hired by KinderCare Learning Centers, Inc., as an Accounts Payable Clerk in June, 1992, at a rate of $6.00/hour. *Affidavit of Joan E. Passmore.* In October of 1993, she was promoted to the position of Bank Reconciliation Assistant, with a raise in pay to $7.35/hour. *Id.*[1] She received an additional raise to $7.79/hour at a later time. *Id.* When hired by KinderCare, Passmore had experience as an insurance premium auditor, 3 years of experience as a tax auditor with the IRS, and 9 months experience with a hospital in patient accounts. *Passmore Resume.* In addition, she had received a degree in Business Administration from Auburn University at Montgomery, and had completed 10 hours of

---

1. A Bank Reconciliation Assistant checks the bank statements of a KinderCare center against other sources of financial information. KinderCare has described the position as follows:

This position will reconcile bank statements to the general ledger system, identify, research and correct outstanding reconciling items. Desires 2 years work experience in a related field. Good computer skills (Lotus) are required. Accounting coursework a plus. *Plaintiff's Exh. A.*

accounting courses at Brenau College. *Passmore Resume.*

KinderCare asserts that the promotion of Passmore to Bank Reconciliation Assistant was not, in retrospect, the best idea. Plaintiff did a great job as an Accounts Payable Clerk at KinderCare. Specifically, her Employee Performance Review of June 30, 1993 rated her as an "outstanding" employee overall, noting negatively that she talked too much with fellow workers and received too many personal calls. After Plaintiff was promoted, however, her job performance declined.

Martha Collier, the employee administrator for KinderCare, states in her affidavit that Plaintiff received "poor" evaluations after this promotion to Reconciliation Assistant. *Collier Affidavit.* Characterization as "poor" is perhaps unwarranted, but in any case, Plaintiff's performance showed a downturn. Plaintiff received an "Employee Conference Memorandum," in May of 1994 which noted that she needed to develop more speed in her work, and develop better organizational skills. *Employee Conference Memorandum, May 18, 1994.* The Memo notes that Plaintiff would be terminated if change did not occur by June 30, 1994. *Id.* Plaintiff was not terminated, so apparently her performance did improve. In fact, a full Employee Performance Review performed on November 11, 1994, notes that Passmore had "improved considerably with organization." *Employee Performance Review, November 11, 1994.* The Review contains some negative statements, however, specifically that Plaintiff still needed to speed up her work, and socialized a bit much. *Id.* Overall, the Review rated Plaintiff the third highest rating (of five possible), which meant that she "consistently me[t] job criteria." *Id.* That is two ratings lower than her rating as an Accounts Payable Clerk. *Id.*

Plaintiff's complaints of discrimination focus on two incidents which occurred in 1994. One is her application for a promotion to supervisor. In November 1994, a supervisor's position came open which Passmore believes she was qualified to handle. *Passmore Affid.* Susan Easter, a KinderCare CPA, recommended Plaintiff for the job. *Passmore Affid.* Passmore inquired about the job, but was not allowed to interview. *Passmore Affid.* Instead, a male, who only had experience in a type of accounting not used by KinderCare and who did not have a college degree, was hired. *Passmore Affid.*[2]

The other incident that Plaintiff complains about occured around the same time. Plaintiff alleges that KinderCare hired two male employees to do the same job as her, but paid those employees more. The Reconciliation Department had been having problems in the summer of 1994. *Collier Affidavit.* A new person, Steve Wakefield, was placed in charge of the Department, and given authority to hire employees to clear up the problems. *Id.* In late 1994 and early 1995, KinderCare hired two temporary employees to fill these positions: Keith Brantley and Timothy Herndon, both males. *Id.* These were the first two male Reconciliation Assistants hired by KinderCare. *Brantley Depo. 22:9–11.*

It is undisputed that, after thirty days passed, these new male employees were making more per hour than Passmore. It was decided that both Brantley and Herndon would start at $7.00/hour and have an opportunity to move to $8.00/hour after 30 days, if they received a favorable review. *Id.* Brantley testified that he received the pay raise at the end of thirty days, to $8.00/hour. *Brantley Depo. 20:9–13.* Passmore offered the only evidence regarding benefits, stating that new hires were eligible for benefits after 30 days. *Passmore Affid.*[3]

KinderCare believed that these workers required a different pay rate because of the temporary nature of their positions. *Collier Affid.* KinderCare represents that the "rate of pay was based on the practical experience, credentials, and negotiated terms for each individual." *Id.* Collier states that the different payment plan was used to "attract

---

**2.** Defendant asserts in its brief that the male was better qualified, and cites the court to Collier's affidavit. Collier's affidavit contains no statements regarding this person, however.

**3.** Defendant's attorney asserts at one point that the temporary employees were not eligible for benefits, and that, therefore, Passmore was receiving more remuneration overall. No evidence was submitted by Defendant on this point, however.

good temporary employees with college degrees and accounting experience, and to hopefully maintain their employment until the end of the project." *Id.*

Both Brantley and Herndon had college degrees and some experience. Specifically, Brantley had a degree in Corporate Finance and Investment Management from the University of Alabama. *Brantley Resume.* He also had part-time experience in reconciliation with Harco. *Brantley Depo. at 12.* He was hired after an interview with Jeff Traver and Steve Wakefield. *Brantley Depo. 18:18–19:3.* Timothy Herndon received a degree in Accounting from Auburn University in December 1994. *Herndon Resume.* His only experience in accounting had been work with the Auburn Small Business Development Center during one quarter of college. The work was performed to determine if it was feasible to operate a fitness center in the town. *Herndon Resume.*

Plaintiff insists that her duties were basically the same as those of the two males hired. *Passmore Affidavit.* Brantley, in fact, testified that he was doing the same job as the Plaintiff, *Brantley Depo. 38:6–17,* and that neither his nor the Plaintiff's job description changed during the time that he was making $8.00/hour. *Brantley Depo. 20:14–21.* Plaintiff states in addition, however, that she was required to undertake some duties which the males were not, including monthly journal entries, problem-solving for centers, and research. *Passmore Affid.* Brantley counters that he fielded calls from centers from day one, but notes that he sometimes had to ask others, such as Passmore, for help. *Brantley Depo. 20:22–21:22.* Passmore also states that she was given more difficult accounts to reconcile, and had to train the new male employees. *Passmore Affid.* Brantley himself testified that Passmore, along with two others, helped train him. *Brantley Depo. at 16.* These additional duties allegedly affected Passmore's productivity. *Passmore Affid.*

Plaintiff left KinderCare to take a job with the State of Alabama on September 29, 1995, citing economic reasons for leaving. *Collier Affidavit.* She had applied for the job four years earlier, in 1991. *Records of Alabama Personnel Dept.* Both Brantley and Herndon were made permanent employees after Passmore left. Herndon was made a permanent employee in January 1996, moving into a position as an accountant. *Collier Affid.* He is now a salaried employee, with his pay based upon performance. *Collier Affid.* KinderCare asserts that Brantley was made a permanent employee on October 23, 1995. *Collier Affid.* Passmore, however, asserts that Brantley told her he was a permanent employee from the day he started work. *Passmore Affid.* Brantley received a raise after Passmore left to $9.00/hour on March 11, 1996. *Collier Affid.* Brantley resigned from KinderCare for other employment on November 8, 1996. *Id.*

KinderCare asserts that both Brantley and Herndon were better employees than Passmore. Both did receive higher employee ratings than Passmore, although the only proffered ratings were done after Passmore left KinderCare. Brantley received a "2" for frequently exceeding most job criteria when evaluated on July 30, 1996, ten months after Passmore left KinderCare. *Employee Performance Review, July 30, 1996.* Herndon also received a "2" for frequently exceeding most job criteria when evaluated on the same date. *Employee Performance Review, July 30, 1996.*

## IV. DISCUSSION

Plaintiff's complaint presents three counts. The first concerns the failure of KinderCare to promote her to the supervisory position. The other two concern the difference in pay between herself and the two male employees.

### a. Failure to Promote

Plaintiff's failure to promote claim is a Title VII claim presented in the form of circumstantial evidence. In order to proceed on a circumstantial evidence claim under Title VII, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981). In a failure to hire case, this may be done by showing "(i) that [s]he is a member of a protected class; (ii) that [s]he was quali-

fied for and applied for the promotion; (iii) that she was rejected; and (iv) that other equally or less qualified employees who were not members of the protected class were promoted." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1539 note 11 (11th Cir.1997).

■ Passmore has presented a prima facie case of discrimination. She is a female, and the employee who received the position was a male. In addition, she has presented evidence that she was qualified for the position, in the form of a recommendation by another KinderCare employee, and her own statements. Finally, she has presented evidence that the male who was actually hired was less qualified than she. He had no college degree and no experience in the type of accounting required for the job.

Most of Passmore's evidence is uncontradicted. Defendant asserts that Plaintiff's performance review is evidence that she was not qualified for the promotion. Although Plaintiff's rating did fall in the Reconciliation job, this evidence does not speak to the promotion. In any case, it is not evidence that Plaintiff was less qualified than the male actually hired. Defendant's motion for summary judgment asserts that the male was better qualified and states that evidence of this will be found in an affidavit. No such statements are in the affidavit, however. No other proof of the male's alleged superior qualifications are given. Plaintiff has, therefore, presented an uncontested prima facie case.

Proof of a prima facie case merely creates a presumption, only a required conclusion in the absence of explanation "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). A Defendant may rebut this presumption by articulating a legitimate, non-discriminatory reason for its treatment of the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094. This is only a burden of production, not persuasion, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–1094; and as such is easily satisfied. *Howard v. B.P. Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994). The defendant must produce admissible evidence which, if believed by the trier of fact, would support a conclusion that the employment action was not the product of unlawful discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 506–507, 113 S.Ct. at 2747.

■ Defendant KinderCare has met its light burden of production, even though it fails to present any evidence of the hired person's qualifications. KinderCare asserts that Plaintiff was not a good employee in the Reconciliation Department; and that her poor performance reflects that she was not qualified to be a supervisor. Passmore's evaluations did fall after she moved to the department. Production of a reason is not enough for summary judgment, however.

Once a defendant meets his burden of producing a legitimate non-discriminatory reason for the employment decision, the presumption raised by the prima facie case is rebutted and drops from the case. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993). The case may continue, however, if the plaintiffs presents some evidence, which may include the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Combs,* 106 F.3d at 1534.

Because it is relatively easy for employees to establish a prima facie case and it is similarly simple for employers to articulate some nondiscriminatory reason for the employment decision, most disparate treatment cases turn on the plaintiff's rebuttal, the plaintiff's ability to produce comparative, statistical or direct evidence of discriminatory motive. *See Miles v. M.N.C. Corp.,* 750 F.2d 867, 870–875 (11th Cir.1985). Comparative evidence is that which shows that employees

who were not members of the protected class and were treated differently. *Id.* Direct evidence can be statements or admissions by the employer or its agent. *Id.*

"Because the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988), cert. den. 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–325, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265 (1986)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

■ Passmore has presented evidence favorably comparing her qualifications to those of the male who was hired; and, in fact, has presented the only evidence on this issue. She has also done enough to rebut the poorly supported reason given by the Defendant. The recommendation rebuts the employee performance review, and the employee performance review, in any case, does not speak clearly to the assertion that the Plaintiff was not qualified. The Eleventh Circuit has stated that "[i]f reasonable minds could differ on the inferences arising from undisputed facts," such as the employee review presented here, "then a court should deny summary judgment." *Miranda v. B & B Cash Groc. Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir. 1992). That is exactly what this Court will do. Defendant's motion for summary judgment is due to be DENIED.

### b. Discriminatory Wages

Plaintiff also claims that Defendant KinderCare discriminated against her by paying her a wage lower than that paid to male employees in the same position. Both the EPA and Title VII provide redress in a case where an employee of one sex is paid less than the opposite sex for doing the same job. *Miranda,* 975 F.2d at 1527. Plaintiff has plead both statutes, and both parties have made arguments thereon.

■ The plaintiff's burdens as well as the legal analysis differ under the laws. EPA requires an employee to prove a "fairly strict standard ... that she performed substantially similar work for less pay." When this burden is satisfied, the burden of proof shifts to the employer to establish one of certain enumerated defenses. *Id.* at 1526. Title VII by contrast requires a more "relaxed standard of similarity" between the jobs, and does not shift any burdens of proof to the defendant. However, under Title VII, the "plaintiff has the burden of proving an intent to discriminate on the basis of sex," which she does not have under the EPA. *Id.*

■ **The EPA.** In order to "survive a motion for summary judgment, a plaintiff must at least establish the necessary elements of his or her cause of action and demonstrate the presence of genuine issues of material fact." *Miranda v. B & B Cash Grocery Store,* 975 F.2d 1518, 1532 (11th Cir.1992). The Plaintiff's required burden of a prima facie violation of the Equal Pay Act consists of a showing that she has been making less money than a male worker who does substantially the same work in a similar position. *Miranda,* 975 F.2d at 1526 (11th Cir. 1992). Passmore has met this burden. She has shown that employees of a different sex, employed in the same job in the same department, were making more than her. The evidence is uncontradicted that there was a period in which the male hires, Brantley and Herndon, were making $ 8.00/hour and Passmore was making $ 7.79/hour. The evidence is also uncontradicted that Brantley began making $ 9.00/hour while working in the exact same position as Plaintiff some time after she left.[4]

Defendant challenges Passmore's prima facie case, contesting the assertion that Passmore and the males were performing the same job. Specifically, Defendant asserts that Passmore cannot show a prima facie case because she was a permanent hire, and Brantley and Herndon were temporary hires.

---

4. If a male succeeds a female in a job, and the male is paid more for no legitimate reason, this may state a violation of the Equal Pay Act. *See* 29 C.F.R. § 1620.13(b)(4)

Defendant places too much emphasis on the mere words "permanent" and "temporary," however. Plaintiff is not required by the EPA to prove that the jobs are "identical" in all respects. *Miranda,* 975 F.2d at 1533. Rather, an appropriate inquiry focuses on whether the "skill, effort and responsibility required in the performance of the jobs are 'substantially equal." *Id.* The focus in a prima facie case is on the "primary duties of each job." *Id.*

The evidence is uncontradicted that all three employees were performing the same primary duties. Plaintiff has presented adequate evidence of this, and such evidence remains uncontradicted. If anything, Passmore has presented evidence that she was performing duties greater than those of the temporary employees. Defendant is certainly not arguing that Plaintiff's performance of duties requiring even more effort and responsibility entitles her to less pay.

Defendant also protests that Plaintiff may not meet her burden of proving a prima facie case because she has not shown that she was actually making less money. In other words, Defendant asserts that Plaintiff was receiving more pay because she, unlike the temporary employees, received benefits.[5] This assertion is made only in the brief of Defendant's lawyer and is not supported by evidence. The court is left, therefore, with uncontradicted evidence that Plaintiff was making $ 0.21/hour less than the males; and with an unchallenged affidavit by the Plaintiff stating that new employees are entitled to benefits after 30 days. Defendant is not entitled to summary judgment on these facts.

Just showing that a prima facie case exists is not sufficient to find liability under the EPA, however. Sometimes differences in pay exist for good reasons, and the EPA respects certain such reasons. A wage disparity does not violate the EPA if it results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity of quality of production; or

(iv) any factor other than sex." *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995), quoting 29 U.S.C. § 206(d)(1). The Eleventh Circuit has found factors other than sex to "include 'unique characteristics of the same job; … an individual's experience, training or ability; or … special exigent circumstances connected with the business." *Irby,* 44 F.3d at 955, quoting *Glenn v. General Motors Corp.,* 841 F.2d 1567, 1571 (11th Cir.), cert. den. 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). It is the employer's burden to prove one of these defenses; if the employer fails to satisfy this burden, the plaintiff wins. *Irby,* 44 F.3d at 954. This is a "heavy" burden, because, in effect, the Defendant is required to "show that the factor of sex provided no basis for the wage differential." *Id.,* quoting *Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 590 (11th Cir.1994), cert. den. 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994).

█ Defendant KinderCare has asserted three reasons to support the wage disparity. Basically these are: (1) the qualifications of the males paid more than Passmore, (2) the performance of the males paid more than Passmore, and (3) the circumstance of the temporary employment of the two males. Each of these proffered justifications will be considered, at least to some degree. The Eleventh Circuit has said that "so long as subjective business justifications … are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir.1991). If KinderCare successfully raises an affirmative defense, the burden shifts to Passmore to prove that the asserted reason is merely a pretext for sex discrimination. *Irby,* 44 F.3d at 954. If Passmore "is able to create the inference of pretext, there is an issue which should be reserved for trial." *Id.* In the present case, Passmore creates an inference of pretext as to all defenses raised by the Defendant.

---

**5.** "Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment.... Fringe benefits are deemed to be remuneration for employment." 29 C.F.R. § 1620.10–11. *See Sowers v. Kemira, Inc.,* 701

F.Supp. 809, 822 (S.D.Ga.1988), where the district court granted judgment to the Defendant on a wage discrimination claim after trial. The defendant proved as an affirmative defense that, among other things, Plaintiff's salary was supplemented by benefits.

KinderCare could successfully raise an affirmative defense if it "proves that [it] relied on prior salary and experience in setting a 'new' employee's salary." *Irby*, 44 F.3d at 955. Defendant has raised this argument, asserting that the males hired were more qualified. Plaintiff has, however, offered rebuttal evidence of pretext. Brantley had a college degree in a business field and less than a year of experience while in college. In comparison, Passmore had a college degree in a business field and more than a year of experience with KinderCare. Herndon had a degree in accounting, which of course Plaintiff did not have, although she did have some course hours in accounting. Herndon, however, had no experience in reconciliation. Passmore by contrast had the time at KinderCare. Defendant has not shown that there is no material issue of fact raised as to the relative qualifications of Passmore and the two males.

Defendant also argues that the males deserved more because of their superior performance on the job. It is not clear to this court whether Defendant is asserting a "merit system" defense or simply a "factor other than sex" defense. Neither defense is proven by the Defendant's submissions made to this court; in the least both are rebutted by Plaintiff's evidence.[6] This is not proven by the Defendant's submissions made to this court, or, in the least, is rebutted by Plaintiff's evidence. Relevant evidence submitted includes an employee performance review of Passmore, and like reviews of the two defendants. The court would point out that these reviews are not argument-ending submissions. Plaintiff's review was from November 1994. The respective reviews of the male employees were from July 1996. It does not seem a precise comparison. In any case, the reports only show a one rating difference between the employees. Furthermore, Defendant has not shown how, or if, it uses employee reviews to determine salaries. Defendant also has not shown how the higher salaries received by Brantley and Herndon (which began one month after they started work), could be justified by the performance reviews (which were performed a year and a half after they began work). Movant has not shown that there is not a material issue of fact with regard to this affirmative defense.

Defendant also raises an additional defense, that the disparity was justified by the unusual circumstances of the temporary jobs.[7] This argument is unsupported except by the statement of a KinderCare employee. That employee states that it was an "effort to attract good temporary employees with college degrees and accounting experience, and to hopefully maintain their employment until the completion of the project." *Collier Affid.* Defendant has not done enough to show that there is no material issue of fact as to whether temporary employees must be paid more. Defendant's assertion appears to raise little more than an argument that the 'market made us do it.' This justification has troubled courts before. *See generally Glenn v. General Motors Corp.*, 841 F.2d 1567, 1570–71 (11th Cir.1988) (rejecting affirmative defense that company hired women at lower salaries, and maintained those salaries through transfers, because women would accept less). Certainly the market compels businesses to do many things. Perhaps it even compels them to pay temporary employees in Reconciliation $8.00/hour. Nevertheless, even if the market compels KinderCare to pay the new employees $8.00/hour,

---

**6.** Defendant may not, in fact, have even successfully raised a merit system defense. This defense requires a defendant to clear a significant hurdle. The defendant must prove that it has a " 'system' which presents a means or order of advancement or reward for merit." *Brock v. Georgia Southwestern Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985). Systems which are "informal," or based on "ad hoc," "subjective," or "personal" judgments, cannot qualify as such. *Id.* Furthermore, this defense is "strictly construed against the employer" so that the exception does not "swallow the rule." *Hodgson v. Brookhaven Gen. Hosp.*, 436 F.2d 719, 726 (5th Cir.1970), appeal after remand 470 F.2d 729 (5th Cir.1972). *See also Morgado v. Birmingham–Jefferson County Civil Defense Corps*, 706 F.2d 1184, 1188 (11th Cir.1983) (determining that "written set of job descriptions, regularly evaluated," did not constitute a merit system), *cert. den.* 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). Where a system is not determined to qualify as a merit system, the court may still treat it as a factor other than sex. *See Brock*, 765 F.2d at 1036.

**7.** This argument is made both to contest Plaintiff's prima facie case, and to offer an affirmative defense.

the law will not allow Passmore to be paid less for the same job.

"[C]ertain unusual, higher than normal, wage rates" are sometimes asserted as a successful defense under the theory of "red-circl[ing]." *Mulhall*, 19 F.3d at 595. This applies in situations such as where employees are transferred to temporary, less-demanding positions, "in order to have [the employee] available again when needed in the former job." *Id.* The Eleventh Circuit has specifically rejected this theory, however, when offered to support higher salaries for "new employees brought into the organization to fill" positions comparable to the Plaintiff's. *Id.* at 596. Red-circling was determined to be valid only when it supports higher wages which were "maintained (not created) for a valid reason." *Id.* Higher salaries for Brantley and Herndon were "created" for some reason, at the start of their employment, not "maintained" through some transfer or other mechanism. The defense of red-circling would not allow this practice.

■ **Title VII.** Plaintiff's claim under Title VII for the disparity of wages is analyzed under the *McDonnell/Burdine* analysis discussed above. The same shifting burdens apply: first, plaintiff's prima facie case; second, defendant's proffered reasons; and, third, plaintiff's response. A plaintiff establishes a prima facie case of a Title VII violation based on a disparity of wages by "showing that she occupies a job similar to that of higher paid males." *Meeks*, 15 F.3d 1013. As shown by the evidence discussed above, Plaintiff has demonstrated that she was paid less than males in a similar job. The evidence is undisputed that the males were paid $8.00/hour and Passmore was paid $7.79. The evidence is also undisputed that, but for the fact hers was a permanent job and the males' job was temporary, there were no increased duties for Brantley and Herndon to justify the increased wages. As discussed above, differences in duties are what matter for the purposes of Plaintiff's proof of a prima facie case, not any differences in the duration of the employment. Plaintiff has shown a prima facie case.

■ Once a prima facie case is shown, it becomes the duty of Defendants to "produc[e] a legitimate, non-discriminatory reason for the pay disparity." *Miranda*, 975 F.2d at 1529. As discussed above, Defendants have proffered evidence of three legiti-

mate reasons for its actions. This evidence suffices to satisfy the Defendant's light burden of production under Title VII. In addition, however, Plaintiff has produced evidence to rebut these proffered reasons, and to show that the real reason was discriminatory. There is not evidence to show that the males were clearly more qualified; that the males clearly outperformed Plaintiff; that their salary was based on performance; or that there was some difference in duties which supports a higher wage.

A genuine issue of material fact exists as to whether Defendants intentionally discriminated against Plaintiff by paying her a smaller wage than that received by males in a similar position. Defendants have not presented undisputed evidence to challenge this; therefore, summary judgment on this claim is due to be DENIED.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment is DENIED.